HENRY SUTZIN, Administrator of the Estate of LULU M. SUTZIN, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Negligence:** JURY QUESTION: *Railroads*. A girl of twelve and a boy of eleven were near the center of a long bridge. Two tracks, about three feet apart, crossed it. For a distance, a twelve inch plank walk ran between the tracks. Seeing a train approaching on the north track, the children ran ahead of it, the girl on the south track, the boy on the walk. A train now approaching on the south track ran her down and threw her under the train on the north track, where she was killed. The evidence is in conflict on whether the north train could have been stopped after the children were observed. *Held*, a finding that the accident could have been averted had proper effort been made to stop the train running on the north track, and that it was negligence not to have stopped it will stand on appeal, though the engineer thought the children would go upon the plank walk. Contributory negligence is no defense when injury to a trespasser arose from negligence of the crew after discovery that the trespasser was in peril. A mere mistake in judgment may amount to said negligence.

**Practice.** That a special finding lacks support is not prejudicial when the verdict can stand if the finding be disregarded. The finding in question does not, under the circumstances of this case, indicate passion or prejudice.

*Appeal from Linn District Court.*—HON. JAMES D. GIFFEN, Judge.

FRIDAY, MAY 31, 1895.

Action at law by plaintiff, as administrator of the estate of Lulu M. Sutzin, deceased, to recover damages for her death, caused by the alleged negligence of defendant's employes.  Trial to the court.  Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Mills & Keeler* for appellant.

*Rickel, Crocker & Christie* for appellee.

Deemer, J.—Just outside of the corporate limits of the town of Marion is a high, uncovered, iron-truss railway bridge, with long trestle approaches thereto, crossing what is known as "Indian Creek." This bridge is thirty feet high, and, with its approaches, is four hundred and eight feet long. It crosses Indian creek in an east and west direction, and is about one-half mile from the depot in Marion. The bridge is a double one; that is, built for two tracks. The north span carries what is known as the "Main Line," or Council Bluffs track; and the south span, that of the Kansas City line.  These two tracks run parallel, and in close proximity, from the station at Marion, which lies east of the bridge, to a point some little distance west of the west end of the bridge.  The distance from the south rail of the Council Bluffs track to the north rail of the Kansas City track is about seven feet and eleven inches; and in the center of this space, between the tracks, except at the iron span, is an open space between the ends of the ties, on either bridge, of about twelve inches.  For the entire length of the iron span, which is near the center of the bridge, and is one hundred and six feet in length, this space between the ties is filled in with solid planking, making a walk there twelve inches wide.  The entire width of the bridge is twenty-five feet.  The entire space between two trains

crossing at the same time over this bridge is not
to exceed three feet.    One hundred and thirty-eight
feet east of the east end of this bridge is an open,
overhead highway bridge, and about one thousand two
hundred and seventy-five feet east of the west end of
the Indian Creek bridge is a barn.    The railway tracks
approach the creek bridge from the east on about
a two per cent. curve, until within about nine hun-
dred feet of the west end of the bridge, from which
point on west they are straight until the bridge
is passed.    From the bridge eastward to Seventh street,
in the town of Marion, there is quite a heavy grade,
averaging about forty-five feet to the mile.    On the
morning of June 29, 1892, the plaintiff's intestate, Lulu
M. Sutzin, a girl twelve years of age, with her brother,
aged eleven, left their home in Marion to go across the
creek on an errand.    They crossed upon a highway
bridge situated a little south of the railway bridge, and,
after accomplishing their purpose, they started to
return by the same route over which they came, but,
before reaching the bridge, changed their minds, and
concluded to return by following the railway track and
crossing the railway bridge.    They took the south or
Kansas City track, and had progressed to a point near
the center of the bridge, when they discovered a train
quite rapidly approaching upon the Council Bluffs
track.    Pausing a moment to watch it, they almost
immediately discovered another train, but little behind
the one on the Council Bluffs track, coming towards
them on the Kansas City track.    Both children imme-
diately became frightened, and started to run toward
the west end of the bridge.    The girl took the center of
the Kansas City track; and the boy, the plank between
the ties over the iron span.    When the boy reached the
end of this plank he squatted down upon the plank, and
called to his sister, who was some distance in advance,
for her to return to him.    She replied that she could

not, and continued to run towards the west. There was no attempt made to slacken the speed of, or to stop, the Council Bluffs train; and it passed her while she was fleeing for life in front of the Kansas City train, while she was not a great distance west of the iron span. It is claimed that every effort was made to stop the Kansas City train as soon as the children were discovered, but, whatever the fact may be, it ran the girl down when she was within a few feet of the west end of the bridge, and threw her against or under the Council Bluffs train, where her head was crushed and mangled so that she died instantly. This action is brought by her administrator to recover damages for her death, and in the petition it is claimed that the engineer of each train was guilty of carelessness and negligence, in failing to stop after he discovered the children upon the track. The case was submitted to a jury, which returned a general verdict for the plaintiff, and made the following special findings:

"First. Did Engineer Prior do all he could to stop his train as soon as he actually discovered Lulu Sutzin upon the bridge, and in a position of peril? A. No. Wesley Stephens, Foreman. Second. Do you find that Engineer Prior wantonly and recklessly failed to do all in his power to stop his train as soon as he actually saw Lulu Sutzin on the bridge, and in a position of peril? A. Yes. Wesley Stephens, Foreman. Third. When Engineer Haines discovered the children upon the bridge, were they then in a position of danger from his train? A. Yes. Wesley Stephens, Foreman. Fourth. Did Engineer Haines believe that the children were between the tracks, and out of danger, when he saw them upon the bridge, and for that reason fail to stop his train before reaching them? A. No. Wesley Stephens, Foreman. Fifth. Was Engineer Haines guilty of a mere mistake of judgment, in failing to stop his train after he saw the children upon the bridge?

A. No. [Not signed.] Sixth. Was Engineer Haines guilty of wanton and reckless negligence, in not stop ping his train? Yes. Wesley Stephens, Foreman.' And also the following three special findings, at plaint iff's request, to-wit: "First. After Engineer Prior dis covered the children upon the bridge, did he exercise ordinary care to stop his train? A. No. Wesley Stephens, Foreman. Second. After Engineer Haines discovered the children upon the bridge, did he exer- cise ordinary care to stop his train? A. No. Wesley Stephens, Foreman. Third. When Engineer Haines discovered the children on the bridge, were they in dan- ger from both trains? A. Yes. Wesley Stephens, Foreman." Haines was the engineer of the north, or Council Bluffs, train; and Prior, of the Kansas City train.

I. It is insisted that the court erred in refusing to instruct that deceased was guilty of such contribu- tory negligence as to prevent recovery herein. That she was guilty of negligence in going upon the bridge must be conceded. She was also there without right, and was a trespasser. But it does not fol- low that her negligence will bar a recovery. The action is predicated upon the thought and the charge is made that the defendant's engineers were guilty of negligence causing the death of plaintiff's intestate after they discovered her upon the track, and in a posi- tion of peril. The negligence of the deceased is no defense, if plaintiff has established the allegations of his petition, for it was not the proximate cause of the injury, and was not contributory. See *Orr v. Rail- way Co.*, 94 Iowa, 423 (62 N.W. Rep. 851). A plain and simple statement of the rule in such cases is found in 1 Shearman & Redfield Negligence, section 99: "That party who last has a clear opportunity of avoiding the accident, notwithstanding the negli- gence of his opponent, is solely responsible for it."

In this connection, appellant contends that under the following instruction the verdict should have been for the company. "(5) You are instructed that plaintiff's intestate, Lulu M. Sutzin, was confessedly negligent in being on the bridge of the defendant company in question, she being a trespasser at the time on the defendant's bridge, and this negligence contributed proximately to her death. And under these circumstances the defendant company owed her no duty, except the exercise of ordinary and reasonable care and diligence after she was discovered on the bridge, or after her peril became apparent to its engineers on the trains in question, to avoid injury to her." The first paragraph of this instruction, standing alone, would seem to call for a verdict for the defendant, and it is manifest, that the court did not use the word "proximately" advisedly. But the latter paragraph properly qualifies the preceding one, and, when taken as a whole, the instruction presents the law, as we understand it. The jury was not bound to find, under this instruction, that the deceased was guilty of such negligence as would absolutely preclude recovery.

II. The court instructed the jury, in substance, that the children were trespassers upon the bridge, and that the defendant's employes owed them no duty, except the exercise of ordinary care and diligence after they were discovered on the bridge, or after their peril became apparent, to avoid injuring them. It is insisted that there is not sufficient testimony tending to show negligence on the part of either engineer; that the fault, if any, in either, was simply a mistake of judgment, for which neither they nor the defendant is responsible. The degree of care required of an engineer when he sees children on the track, and in position of peril, has recently undergone extended examination in the case of *Burg v. Railroad Co.*, 90 Iowa, 106 (57 N. W. Rep. 680). It is there said that, "when the engineer

knew the fact of these small children being on the track, he had sufficient reason to know they would remain, and he was at once charged with the highest degree of care in their behalf." In the case of *Walters v. Railroad Co.*, 41 Iowa, 71, an instruction as follows was approved: "If an infant of that age [2 years] is found alone in a place where he is exposed to danger, and in a situation where he can easily be seen, it is the duty of the person approaching him to use all the care and caution he can command to avoid injuring him. And if such person fail to use such care and caution, and injury results to the infant, such person is guilty of negligence,"—this court remarking, "The doctrine of this instruction is humane and just." In the case of *Masser v. Railroad Co.*, 68 Iowa, 602 (27 N. W. Rep. 776), it is said: "It was their duty, of course, upon discovering deceased upon or near their track, to give warning, and stop the train as soon as possible. And if the train might have been stopped after such discovery the defendant, doubtless, was liable." In this case the deceased was between eleven and twelve years of age. See, also, *Morris v. Railroad Co.*, 45 Iowa, 29; *Albertson v. Railroad Co.*, 48 Iowa, 292. Now, it is conceded that Engineer Haines saw the children when he was from one thousand to one thousand one hundred feet away from them, and that he could have stopped his train before it reached them. As to the time when they were discovered by Engineer Prior, there is a difference between counsel. Looking to the testimony, we think the jury may well have found that Prior discovered the deceased when he was from eight hundred to nine hundred feet east of the west end of the bridge, and within six hundred or seven hundred feet of where she was standing. We think, too, that the jury may well have found that the Council Bluffs train was running at from eight to ten miles an hour when the children were discovered, and the Kansas City train from six to eight,

although the testimony is somewhat uncertain on these points. Prior claims that immediately upon the discovery of the children he did all in his power to stop his train, but was unable to do so, because of the grade, and the momentum of the train, until after it had struck the girl. Had we this question to pass upon as an original proposition, we would be inclined to agree with him. But there was a conflict in the testimony upon this point, and the jury were authorized to find that he might have stopped his train, with the appliances at hand, at the speed at which it was running, so as to have avoided injury to the child. It may have found that Prior did not immediately use all the means at his command to stop the train after he discovered the children, from the fact that, according to some of the testimony, he was near the east end of the bridge before calling for brakes. Then, again, they may have found that he could have stopped the train within seven hundred feet after discovering the deceased upon the track. And these findings would not be without support in the testimony. But, however this may be, we think the jury could well have found that Engineer Haines was negligent after he discovered the children upon the bridge. It is conceded, he could have stopped his train after he saw them. He did not do so, because, he says, as we understand him, that he thought they would or might get upon the planking on the iron span, and avoid injury. We do not think he was justified in any such conclusion. He knew the other train was close behind him, and that in all probability the trains would be upon the bridge at the same time. He was running at from eight to ten miles per hour. The actual space to stand in between the tracks was but little, if any, more than three feet. But few men would care to take chances of standing in such a place, with trains passing as these were, and we think it is entirely unreasonable to conclude that children would stand

there without iminent danger of injury. The first impulse of a child placed in a position these children were is to run away from the impending danger. The girl did just as would be expected from one of her age. The boy, who was running on the planking, came to the end thereof, and there crouched down in abject fear. His act was not the exercise of judgment and discretion, but rather of an impulse created by the circumstances. Had Haines stopped his train as he might, the jury were justified in finding the accident would have been averted. The children, when they discovered the first train, were preparing to get upon the other track, and became frightened when they saw a train on this one also; and, had Haines stopped his train, it is reasonable to suppose the girl would have stepped over and upon the track on which his train was running, and have escaped.

It is insisted in argument, however, that the error of Haines was a mere mistake of judgment, for which the defendant is not responsible. Even if it be conceded that this is true, it is none the less negligence. Negligence is frequently nothing more than a mistake of judgment. It may be that a mistake of judgment, unless very gross, is not willfulness. But plaintiff is not required to show defendant's employes willfully inflicted the injury. See *Orr v. Railway Co., supra.* We think the jury was warranted in finding that Haines was negligent. If their conclusion that Prior was also negligent be erroneous, it is error without prejudice; for, upon finding that Haines was negligent, a verdict should have been returned for plaintiff.

III. It is next insisted that the court erred in sustaining the special findings as to Engineer Haines, particularly the one in answer to the sixth interrogatory. These findings must be considered in the light of some of the instructions, one of which was as follows:     (7)

"Engineer Haines, who was in charge of the train on the north track, was bound to exercise reasonable care and diligence to avoid injury to the deceased after he discovered her on the bridge in question, if she was there in a position of danger or peril, and if he did not exercise such care and diligence after thus seeing her in peril, if she was, and on account of such want of care she was struck and killed, then he would be guilty of wanton or reckless negligence; and the defendant would be liable, unless the deceased was at the time herself negligent, contributing to the injury, in not exercising ordinary care to escape or avoid the trains in question." The instruction is complained of because it is said to hold the defendant responsible for a mistake of judgment on the part of its employes. We do not think this interpretation can be placed upon it. It seems to be in accord with the authorities. Beach, Cont. Neg. section 55, and cases cited. It has been held by some courts that if an engineer discovers one in a position of peril upon the track ahead of his train, apparently insensible of his danger, or incapable of protecting himself against it, and the engineer fails to use ordinary care to avoid injuring him, he is guilty of such reckless and wanton disregard of human life that his conduct is so far regarded as willful as to practically place him entirely outside the law of negligence. We do not at this time either approve or disapprove this doctrine, for it is not necessary to a determination of this case. The answers to the special interrogatories, viewed in the light of this instruction, have support in the testimony.

IV.  Complaint is made as to special findings with reference to the conduct of Engineer Prior. These

findings should also be considered in the light of an instruction similar in its terms to the one given with reference to the conduct of Haines. It may be, as we have said, that, if the case depended upon the alleged negligence of Prior, we would conclude that it had not been made out. But these findings may be entirely disregarded, and still the verdict should have been for plaintiff. We need not say more on this point, except it be that we do not think these findings, in view of the whole record, were indicative of passion or prejudice on the part of the jury.

Errors are assigned on the admission and rejection of testimony. This opinion has already grown too long, and we will not attempt to set out the rulings complained of. It is sufficient to say we have examined each of them, and discover no prejudicial error. The judgment is *affirmed.*