WILLIAM NEET, by his Guardian, America Mason  v. THE
BURLINGTON, CEDAR RAPIDS & NORTHERN
RAILWAY COMPANY, Appellant.

**Contributory Negligence:** DUTY AFTER DISCOVERY OF. Contributory negligence will not preclude recovery for injuries which have

been prevented by the exercise of reasonable care by the defendant after learning of plaintiff's dangerous position.

RULE APPLIED: *Jury question.* A boy seventeen years old, not an employe, and having no right there, jumped on the rear platform of a moving freight train, and soon after, while the train was backing, was thrown upon the track in front of it, and was caught, and carried 254 feet, and both legs were crushed. He testified that he was caught in the back, through his clothing, by a rod, and that he paddled along on his hands, and was injured just before the train was stopped. A scar on his back and the condition of his clothing confirmed this. One witness saw him fall, and struggle to keep his legs from under the wheels. Another testified that he was run over immediately, and a third that he was run over before the cars had moved ten feet. The brakes had been set at once, and a small portion of his trousers on the leg was caught between the brakeshoe and the wheel, but this could have happened after the brakes were set. Both brakemen claimed that they knew nothing of the accident until the train had stopped, but a witness testified that one told the other that there was someone under the train, before it had moved a car length, and that neither made any effort to stop it. Another witness testified that he called to them that there was a man under the train (which they denied) and they signaled but made no effort to stop. The engineer could have stopped the train within a car length if he had received an emergency signal, but he received none; and by the application of brakes it could have been stopped within one hundred feet. *Held* that the question whether the injury might have been prevented by the exercise of reasonable care, after the discovery of the situation of the injured party, was for the jury.

*Appeal from Grundy District Court.*—HON. A. S. BLAIR, Judge.

MONDAY, OCTOBER 10. 1898.

ACTION for damages. Judgment for plaintiff, and defendant appeals.—*Affirmed.*

*S. K. Tracy* for appellant.

*Williams & Kern* and *Boies & Boies* for appellee.

LADD, J.—The only question presented is whether the verdict is sustained by the evidence. As a freight train, consisting of twenty-three loaded cars, one empty, and the

caboose, was passing the depot at Rheinbeck, in a southeasterly direction, to a point beyond certain switches, William Neet jumped on the platform of the moving caboose. After passing the switches, the train stopped, and backed on the passing track in a northwesterly direction. The head brakeman, Jordan, signaled the engineer to stop, and undertook to pull a pin so as to uncouple the rear cars. This pin was wedged in by cinders so that it could not be readily pulled, and the train, in taking up a slack, caused the caboose to jerk, and threw Neet from the platform of the caboose back on the track. He was caught in some way and carried back two hundred and fifty-four feet before the train was stopped. The wheels of the truck ran over both legs, causing injuries which resulted in amputation. He was but seventeen years old, not in the employment of the defendant, and had no right to be on the train. It is not claimed that the defendant is responsible for injuries occasioned by the fall, or which resulted to him immediately afterwards. Indeed, recovery is based on injuries, if any, to him after the train had moved back, subsequent to his fall, one hundred and fifty feet. The charges of negligence are (1) that the brakeman failed to exercise ordinary diligence in stopping the train after being informed of Neet's perilous situation, and (2) that the head brakeman failed to give the engineer the emergency signal upon being so informed, and that, had such diligence been exercised, or signal been given, the train would have been stopped in time to have avoided the injury. Was there any evidence sufficient to go to the jury upon these two charges of negligence? The defendant insists that the evidence conclusively shows that the wheels ran over the legs immediately after Neet's fall. Neet testified that he fell inside of the rails, immediately turned over on his hands and knees, and was caught in the back through his clothing by a rod just back of the first brakebeam, from which he was torn loose when his legs were run over, and that he paddled along on his hands until the train was stopped. A scar on his back

and the condition of his clothing, tended to confirm this story. He also said the wheels ran over his legs just before the train stopped. Davis saw the boy fall, and observed him struggle to keep his legs from under the wheels. Clifford was not positive, but thought his feet fell inside of the rails. On the other hand, Randall testified that the boy fell with his feet over the rails, and his legs were run over immediately. Gibson is unable to say whether his legs fell across the rails or whether he threw them there, but is positive that they were run over before the cars had moved ten feet. Barr, the conductor, felt the jar of the car wheels as though rising and going over something. All that can be said concerning this evidence is that it was in conflict. If the jurors believed Randall and Gibson, or relied upon the inference to be drawn from the statement of Barr, they might well have found that the injury occurred within the one hundred and fifty feet mentioned in the petition. But if they relied upon the testimony of the party injured, somewhat corroborated by other witnesses, then they might well have found that the injury occurred shortly before the train stopped. When Neet was taken from under the cars it was found that a small portion of his trousers on the right leg was caught between the brake-shoe and the wheel,—enough to carry him along. It is said that, because the brake was set immediately after his fall, has pantaloons must have been caught at that time. If so, then this physical fact is conclusive that he was injured within the one hundred and fifty feet, as the conductor set this brake immediately after his fall. But it is shown that the brake-shoes raise and lower when set hard, if the train is in motion, so as to leave a little space between the shoe and the wheel. It is possible, then, that the clothing was caught after the brake was set. If before, owing to the loosening of the shoe, the cloth might have worked out. As, in backing, the wheel would naturally draw or carry everything next to it up to the end of the brake shoe, the cloth might have been caught after the brake was set. This would be more likely to occur after the

wheel had passed over, as the jar would tend to raise the brake, and the mashing of the leg within the cloth would tend to hold that close to the wheel. We cannot say, from the record before us, whether the trousers were caught when the brake was set or at a time subsequent. It was a circumstance to go to the jury to aid in arriving at a just conclusion. But it is said that the brakemen knew nothing of the accident until the train had stopped. Both of them so testified. Mitchell testified that he heard Strong, one of the brakemen, tell Jordan not to pull the pin, as there was some one under the train; that then the train had moved but a car's length after Neet's fall, and that the brakemen made no effort to stop it, by setting brakes or otherwise. Davis testified that he saw the accident; called to the brakemen, who were up towards the engine; ran and told them that a man was under the train, when they gave signals, but made no other effort to stop it. The engineer said that he received no emergency signal, but, if he had, he could have stopped the train within a car's length. It was moving slowly when Davis went to where the brakemen were, and he says that between the time of the fall and when he informed them of Neet's peril it had moved about fifteen feet. As he was forty feet beyond the caboose, and the train about 900 feet long, we take it that his estimate of the distance the train had moved is not reliable. It is said that no man with feeling would have refused to stop the train, but such an omission may result from a mistaken conclusion that all possible injury has been done. It should be added that both brakeman deny receiving any information from Davis. No pressure was being applied by the engine, and by the application of brakes the train could have been stopped within one hundred feet. The mere statement of the evidence shows the issue was for the determination of the jury.

Again, it is argued that the injury to Neet was so immediately connected with his own negligence in jumping upon the train, and the fall therefrom, that he cannot recover. It

is settled in this state, that even though the plaintiff was negligent, if the defendant, knowing this, might have avoided injury by the exercise of reasonable care, and failed to do so, recovery may be had. *Benton v. Railroad Co.,* 55 Iowa, 496; *Morris v. Railroad Co.,* 45 Iowa, 29; *Sutzin v. Railway Co.,* 95 Iowa, 304; *Orr v. Railway Co.,* 94 Iowa, 423; *Ford v. Railway Co.,* 106 Iowa, 85. In *Ferguson v. Railway,* 100 Iowa, 733, it was held that the evidence did not warrant the finding that the employes of the defendant had knowledge of Ferguson's peril. We conclude that the evidence was such as to warrant the submission of the issue to the jury, and the judgment is AFFIRMED.