ELIJAH PIVER, DEFENDANT IN ERROR, v. PENNSYLVANIA RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued November 27, 1906—Decided June 17, 1907.

In an action against a railroad company for injuries caused by defendant's failure to keep a highway crossing over its tracks in proper repair—*Held*, that the proofs failed to show any default on the part of the defendant in the proper maintenance of such crossing.

---

On error to the Camden Circuit Court.

For the plaintiff in error, *Thomas L. Gaskill.*

For the defendant in error, *John W. Wescott.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.  The plaintiff, Piver, while driving down Fourth street, in the city of Camden, in December, 1904, was thrown from his wagon while crossing the tracks of the defendant company, where they intersect that street, and quite badly hurt.  He seeks by this suit to recover from the defendant company compensation for his injuries, basing his claim upon the allegation that the accident was due to the failure of the defendant to keep in proper repair the passageway over its tracks.  The trial of the case resulted in a verdict and judgment in favor of the plaintiff.  The present writ brings up that judgment for review.

According to the testimony of the plaintiff upon the witness-stand, the accident happened under the following conditions: He was driving down Fourth street, toward the railroad crossing, upon the trolley tracks which were laid in that street. When he came to the railroad crossing, and had passed over one and perhaps two tracks, one of the feet of his horse became fast, causing the animal to fall. The sudden checking of the wagon precipitated the plaintiff out of it and upon the roadway. The plaintiff himself, and one Gladney, who was on the wagon with him at the time of the accident, are the only witnesses called in his behalf who testified to the happening of the accident, and they both agree that it was caused by the foot of the horse becoming caught. Neither of them, however, was able to state in what it was that the animal's foot became fastened. The plaintiff says: "My horse got his foot fast some way, I don't know, it was so quick as that, so fast it threw me. * * * I was thrown over to the left of the horse; the horse fell to the right; his right foot was fast and I went over to the left." He was then asked:

"Q. What happened to the horse when his foot was caught?

"A. Well, he was so fast that some man there——

"Q. Well, was the horse thrown, or did he stand up?

"A. He fell over to the right; threw him on his side over to the right.

"Q. Was he held there in that position?

"A. Held so fast that some man had to take an iron crowbar and pry his foot.

"Q. You saw him pry his foot out, did you?

"A. Yes, sir."

Gladney, being asked to tell what he recollected of the accident, said: "As we got on the track, the horse throwed Mr. Piver, kind of catched himself with his foot, and Mr. Piver went out, with the lines in his hands, on his face, and he had no more—was just raising up, and the horse made a start and throwed me down between the shafts and his legs, and the horse fell on me." He was then asked:

"Q. What was the matter with the horse?

"A. That I don't know.

"*Q.* Do you know whether the horse got caught or not?

"*A.* I don't know nothing; after I was taken out I seen a man with a crowbar prying his foot out; that is all I know.

"*Q.* Well, you afterwards saw them prying the horse's foot out?

"*A.* After they were taking me out, as I was getting on my feet, I seen a man prying the horse's foot out."

This is the whole of the testimony offered on behalf of the plaintiff to support his contention that the catching of his horse's foot was due to the defective condition of the crossing, and it may well be doubted whether it was sufficient to support a finding of dereliction of duty on the part of the defendant. Assuming, however, that it was sufficient to call upon the defendant for an explanation, under the doctrine of *Bahr* v. *Lombard, Ayres & Co.,* 24 *Vroom* 233, and *Bien* v. *Unger,* 35 *Id.* 596, the proofs submitted on behalf of defendant demonstrated that the accident to the plaintiff was not the result of any lack of care on the part of the company in keeping this crossing in proper repair. As has already been intimated, the accident occurred at a point where the defendant company's tracks were crossed by the tracks of a street railway company, and it was necessary that the intersection of the tracks should be so arranged as to provide for the safety both of travelers upon the street railway and those upon the defendant's road. For this purpose the defendant company installed what is called a "cross frog." This frog was of standard pattern, and consisted of a main rail, upon which the cars were run, and a guard rail, to prevent them from leaving the main rail. The distance between the main rail and the guard rail of this frog was one and three-quarters inches, and this space was absolutely necessary for the play of the flange of the car wheels. It was between these two rails that the foot of plaintiff's horse was caught, presumably by the calk of the shoe becoming wedged in the space. Two witnesses produced on the part of the defendant testified to this fact. One of them, Mahoney, was a gateman in the employment of the company, stationed at this point, and the other, Ginnelly, was a carpenter in its employ, who was pass-

ing the place where the accident occurred on his way to dinner. Ginnelly testifies that he pried the horse's foot loose with a crowbar, and Mahoney testifies to the same thing. No attempt was made on the part of the plaintiff to impeach the credibility of either of these witnesses, and their story is not contradicted by anything testified to on behalf of the plaintiff. It must be accepted, therefore, as true, and it demonstrates that the accident was not the result of any neglect of duty on the part of the defendant company in maintaining in good repair a proper passageway over its railroad, and that being so, it is under no legal liability to answer to the plaintiff for the injuries which he received.

The judgment under review should, therefore, be reversed.

GARRISON, J. (dissenting). Upon the question of the defendant's liability, the trial court left it to the jury to say whether in the construction of the street crossing the defendant had left "an improper space between the planking and the rail, or the main rail and the guard rail, in which the horse's hoof or shoe had caught." If the horse's hoof had caught between the planking and the rail, an inference of negligence could be drawn. There was testimony competent to prove that this was so. Whether it was so or not depended upon the meaning and force ascribed to the plaintiff's testimony, and whether it was believed in face of contradictory proof given by the defendant's witnesses. This presented essentially a jury question, which it was not error to leave to the jury.

I shall vote to affirm.

I am authorized by Judge Vroom to say that his vote is upon the ground stated in this memorandum.

*For affirmance*—GARRISON, VROOM, J.J.    2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL, J.J.    13.