**ATCHISON, T. & S. F. R. CO. v. WOOLEY.**

No. 9209—Opinion Filed Dec. 23, 1919.

Rehearing Denied April 13, 1920.

(Syllabus by the Court.)

**1. Railroads—Highway Crossing—Care and Maintenance.**

Section 1432, Rev. Laws 1910, wherein it provides that a railroad company in constructing its road across a public highway or street shall maintain the same "unobstructed" in a good condition for the use of the public, when construed in connection with section 1382 and section 1387, Rev. Laws 1910, means that such railroad must restore said highway, or street, to its former state, or to such a condition as not to materially impair its usefulness as a highway, and so maintain the same. Held, further, that the construction of a railroad track or switch across a public highway or street is not an obstruction within the meaning of section 1432, Rev. Laws 1910.

**2. Same—Negligence—Liability.**

Under and by virtue of section 1387 and section 1432, Rev. Laws 1910, it is the duty of the railroad company to restore and keep

in repair a highway crossing, and where it negligently fails to perform that duty, it will be liable for damages for injuries occurring upon said crossing by reason of said negligence.

### 3. Same—Injury to Horse—Sufficiency of Evidence.

Plaintiff's horse in some manner caught the front toe calk of its shoe between the guard rail and switch rail of a switchfrog and lunged and fell, thereby injuring the horse. The petition alleged that the switchfrog was not safeguarded in any manner, and the only evidence offered by the plaintiff was that the switchfrog was not safeguarded, but no evidence was introduced to show in what way or manner the same might be safeguarded, and no evidence was introduced to prove that the switchfrog was defective or out of repair, or that there was any act of negligence in the installing or laying of said switchfrog, and the defendant presented uncontradicted proof that the switchfrog was of standard pattern, of general use, and properly laid and inspected. Held, there was no evidence to support the verdict of the jury.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by Earl Wooley against the Atchison, T. & S. F. R. Co. Judgment for plaintiff, and / defendant brings error. Reversed and remanded.

Cottingham & Hayes and George M. Green, for plaintiff in error.

I. W. Bane, for defendant in error.

McNEILL, J. The plaintiff, Earl Wooley, brought this action against the Atchison, Topeka, and Santa Fe Railroad Company, in the district court of Oklahoma county, to recover damages to a certain horse for injuries received on the railroad track of said defendant, from which injuries the said horse died. From a judgment in favor of the plaintiff, the defendant has appealed.

For reversal of said judgment, the plaintiff in error assigns as error that the court erred in failing to direct a verdict for the defendant. The position taken by the plaintiff in error is that, under the undisputed facts, there was no evidence to support the verdict upon the grounds of negligence. The undisputed facts are that on the 16th day of May, 1916, Earl Wooley was driving a team of horses in Oklahoma City on Reno street, and while driving across the railroad track on said street, his horse caught the toe calk of his shoe in a switchfrog, which was installed in said street by the railroad company, and by reason of being caught in said switchfrog the horse wrenched and injured his left leg, and became incapacitated and worthless, and it thereafter became necessary to

kill said horse. The act of negligence alleged in the original petition is as follows:

"That defendant was and is negligent in maintaining and having a switchfrog not properly safeguarded, so as to prevent a horse getting trapped, and is and was negligent in having a switchfrog not safeguarded in a public street and thoroughfare."

Plaintiff thereafter amended his petition, and · the act of negligence alleged in the amended petition is as follows:

"That the defendant unlawfully and negligently placed and maintained in and on said public highway crossing on said Reno street, in Oklahoma City, an obstruction, switchfrog, and guard rail, not safely guarded; that it was the duty of defendant to construct and maintain a crossing unobstructed, and in good and safe condition for the use of the public; which said obstruction caused the injury to plaintiff's horse."

The only act of negligence alleged in the petition was that the switchfrog was not safeguarded. The only evidence introduced by the plaintiff, Wooley, as to the condition of the switchfrog was that the switchfrog was not safeguarded. The plaintiff in error produced certain witnesses who testified that the switchfrog was in good condition, and properly installed, and was in no way defective, and was one of the modern standard devices, used in the operating of railroads, and it was necessary to install this switchfrog in the place it was installed to make connection with an industrial line.

The sections of the statute cited, which are applicable, are section 1387, Rev. Laws 1910, which provides as follows:

"Every corporation constructing, owning, or using a railroad, shall restore * * * street, highway, across, along, or upon which said railroad may be constructed, to its former state, or to such condition as that its usefulness shall not be materially impaired, and thereafter maintain the same in such condition against any effects in any manner produced by such railroad;"

and section 1382, Rev. Laws 1910, subdivision 7, which provides as follows:

"To have and use equal room, ground, rights, privileges and conveniences for tracks, switches, sidings and turnouts, and upon any levee, river bank, or front, steamboat or other public landing, and upon any street, block, alley, square, or public ground within any incorporated town or city, any character or ordinance of any such town or city to the contrary notwithstanding;"

and section 1432, Rev. Laws 1910, which provides as follows:

"It shall be the duty of every railroad company or corporation doing business, or operating a line of railroad, within this state to construct a crossing across that portion

of its track, road bed, or right of way, which any public highway may run, and maintain the same unobstructed, in a good condition for the use of the public."

Subdivision 7 of section 1382, Rev. Laws 1910, authorizes the railroad company to install and maintain switches upon the streets of a city. The defendant in error contends however, that the maintaining of the switchfrog or track upon a street crossing is an obstruction, and violates the provisions of section 1387 and section 1432, Rev. Laws 1910, wherein it is provided that the crossing shall not be obstructed in any manner. This might be a correct construction of the language of said section if we would give to the word "unobstructed" its literal meaning, but by construing all three of the sections of the statute together, and by giving to the same the construction intended by the Legislature, it could hardly be said that it was the intention of the Legislature to give the railroad company authority to construct its track across the streets and highways, and then say that the construction of the same across a street or highway would be an obstruction and prohibited.

A statute very similar to ours was construed by the Supreme Court of Massachusetts in the case of Newburyport Turnpike Corporation v. Eastern R. R., 23 Pick. 326, the provision of the statute construed being as follows:

"That if any railroad shall be so laid out as to cross any turnpike road, or other way, it shall be so made as not to obstruct such turnpike road or way."

The court, in construing the same, used the following language:

"The word 'obstruct,' in its ordinary sense, means to stop up, and wholly prevent travel, upon a road, or render it unfit for travel. In this section, it cannot be so construed as to say that the travel on such turnpike road or highway shall not be rendered in any degree more inconvenient, because it is clearly implied, in a subsequent section, No. 72, that the railroad corporation may erect a bridge over the railroad, or a tunnel under it, for the travel on the turnpike road, and such elevation or depression of the road must, to some extent, impede the travel upon it, and render it less convenient. We think, therefore, that this section intended to provide that the travel upon a turnpike road or public or private way, already established, should not be stopped by a railroad, but that its continuance should be provided for, by alterations in the road itself, which should increase the impediment and inconvenience of travel upon it as little as possible, and the subsequent provisions were made with a view to such alterations."

A case very similar to the one at bar, decided by this court, is the case of St. Louis

& S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436, Hart's foot became fastened between a rail and a plank on a crossing. There was an opening of about three inches between the plank and rail at the crossing, and while Hart's foot was fastened between said plank and rail, a car was pushed along the track, and before he could remove his foot the car ran over it, thereby causing an amputation of the limb. Justice Kane, in passing upon the question, said:

"We are satisfied, however, that there was not sufficient evidence to establish any want of ordinary care on the part of the defendant in keeping the crossing in proper repair and that this act of negligence cannot be charged against it."

The Supreme Court of New Jersey, in construing a statute while not as broad as our statute, has placed the same construction thereon in the case of Alcott v. Public Service Corporation of N. J., 71 Atl. 45.

This same rule is announced in the case of Piver v. Pennsylvania R. Co. (N. J.) 67 Atl. 109; Bobbink v. Erie R. Co. (N. J.) 69 Atl. 204; Keele v. International R. Co., 157 N. Y. Supp. 147.

The rule announced by Elliott on Railroads (2d Ed.) vol. 3, p. 380, is as follows:

"Where a railroad company, whose duty it is to restore and keep in repair a highway crossing, negligently fails to perform that duty, it will be liable to a traveler upon the highway who, in the exercise of due care, is injured thereby. It has also been held that if it constructs a crossing at a point where all the travel is, although not the true line of the highway as established, it is liable for a defect in such crossing the same as if it were on the true line of the highway."

We do not believe the sections of the statute can be given the construction defendant in error attempts to place upon the same. We think the only proper construction to be given said statute is, that the crossing over which the railroad has been constructed must be restored to its former state, or to such condition that its usefulness shall not be materially impaired, and thereafter the same must be maintained in such condition against any other obstruction, except what is necessary for the use of the railroad to properly lay its tracks or switches upon said crossing.

The defendant in error, in support of his contention, relies upon the case of St. Louis & San Francisco R. Co. v. Bell, 58 Okla. 84, 159 Pac. 336, but we do not think that case is in point. In the Bell case it was alleged in the petition, and evidence was introduced to support the contention, that the railroad company had negligently permitted a deep hole to remain on the highway on its right

of way, and in close proximity to the traveled portion of the highway, and had permitted weeds, brush, and other obstructions to be maintained around the same, and it was alleged that the car in which Bell was riding ran into the hole. In the Bell case the act of negligence relied upon was alleged in the petition, and evidence was introduced to support that contention. Counsel suggests that in the Bell case Justice Turner, in writing the opinion, used the language that the roadway should be maintained unobstructed. It is true that such language is used in the opinion, but an examination of the opinion discloses that the question for consideration was, whether certain weeds and brush on the right of way of the company and on the highway crossing was an obstruction, and whether the permitting of said weeds and brush was an obstruction within the meaning of section 1432, wherein it is provided that the crossing should be maintained "unobstructed." The court held, and Justice Turner in deciding the case stated, that it was not a question of whether the crossing was reasonably safe, but that the statute required the same to be "unobstructed," and the weeds and brush in the position they were, were an obstruction; but the court did not say, nor did the court attempt to say, that the rails of the railroad company, or the planks on the crossing to permit the public to cross the rails, would be an obstruction within the meaning of said section of the statute. We do not think the facts in the Bell case are similar to the facts in the case at bar, or that the holding of the court there is contrary to the views expressed in this opinion.

There is a long line of cases where the facts are very similar to the case at bar, where people were injured by their feet being caught either in a switch or between a plank and rail at a crossing, and recoveries have been had in those cases. Such are Goodrich v. B., C. R. & N. R. Co., 103 Iowa, 412, 72 N. W. 653; Gibson v. Chicago, Great Western Ry Co., 134 N. W. 516; Spooner v. Delaware, L. & W. Ry. (N. Y.) 21 N. E. 696; Elgin J. & E. Ry. v. Raymond (Ill.) 35 N. E. 729, and numerous cases cited with approval in each of those cases. An examination of all of those cases, discloses that the petitions alleged that the crossing or switch was defective, and evidence was introduced to support the theory that the particular place where the injury occurred could be constructed in a different manner, and if so constructed, the injury would not have occurred. In the instant case, the defendant in error alleged that the switchfrog was not safeguarded, and there was no evidence introduced to support the theory that the same could be

safeguarded. Without any evidence that the switchfrog was defective in any manner, or not properly constructed, or as to how the same might be safeguarded, there was no evidence to support an action for negligence.

For the reasons stated, the judgment of the court will be reversed and remanded, with instructions to grant a new trial.

OWEN, C. J., and KANE, JOHNSON, HIGGINS, and BAILEY, JJ., concur.