**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

JIMMIE HERSHEY, individually and on
behalf of all others similarly situated,

Plaintiff - Appellee,

v.

EXXONMOBIL OIL CORPORATION,

Defendant - Appellee.

---------------------------------

WILLIE JEAN FARRAR and KEITH
FARRAR, as Co-Trustees of the Keith
Farrar Revocable Trust, dated October
22,1999; THOMAS L. LAHEY; JOHN
ELDON GREGG and KEITH THOMAS
GREGG, as Co-Trustees of the Marie
Gregg Trust u/a dated April 26, 1979, as
amended; FLEESON GOOING
COULSON & KITCH, LLC; KRAMER
NORDLING & NORDLING, LLC,

Movants - Appellants,

and

PATRICIA A. LAHEY,

Movant.

_____

JIMMIE HERSHEY, individually and on
behalf of all others similarly situated,

Plaintiff - Appellee,

No. 12-3309
(D.C. No. 6:07-CV-01300-JTM-KMH)
(D. Kan.)

v.

EXXONMOBIL OIL CORPORATION,

Defendant - Appellee.

--------------------------------

WILLIE JEAN FARRAR and KEITH
FARRAR, as Co-Trustees of the Keith
Farrar Revocable Trust, dated
October 22,1999; THOMAS L. LAHEY,

Movants - Appellants,

and

PATRICIA A. LAHEY; JOHN ELDON
GREGG and KEITH THOMAS GREGG,
as Co-Trustees of the Marie Gregg Trust
u/a dated April 26, 1979, as amended;
FLEESON GOOING COULSON &
KITCH; KRAMER NORDLING &
NORDLING,

Movants.

No. 13-3029
(D.C. No. 6:07-CV-01300-JTM-KMH)
(D. Kan.)

---

**ORDER & JUDGMENT AFFIRMING IN PART APPEAL NO. 12-3309**
**ORDER DISMISSING IN PART**
**APPEAL NO. 12-3309**
**ORDER & JUDGMENT AFFIRMING APPEAL NO. 13-3029**

---

Before **TYMKOVICH**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

2

This is an appeal from the approval of a class-action settlement between Jimmie Hershey, the appointed class representative and named plaintiff, and ExxonMobil, the defendant.[1] Appellants are primarily parties who objected to this settlement. For convenience, we refer to these objecting parties as Appellants and refer to the three other appellants—the Gregg Trust and the law firms of Fleeson, Gooing, Coulson & Kitch, LLC, and Kramer, Nordling & Nordling, LLC—by name and address their issues separately.

## I.    MOTION TO DISMISS

A threshold question in this appeal is whether Appellants are bound by an appeal-bond requirement in a class action settlement. The district judge overruled Appellants' objections, approved the settlement agreement, and, as specifically provided in the agreement,[2] imposed an appeal-bond requirement to secure the costs of appeal, including attorney fees and the interest likely to be lost on the judgment while the appeal is pending. Despite the terms of the agreement and the district court's order, Appellants did

---

[1] Appellants filed separate notices of appeal dealing with the approval of the class-action settlement and the district court's imposition of a substantial appeal bond. We docketed the two appeals under docket numbers 12-3309 and 13-3029, respectively, but dispose of both appeals with this Order.

[2] Although the time to file objections expired on September 21, 2012, Appellants first raised their present challenge to the appeal-bond provision on December 14, 2012.

not post the bond. Understandably, Hershey moved this court to dismiss the appeal in light of their failure to do so.

In their response to the motion to dismiss the appeal, Appellants contend we should not dismiss because the appeal-bond requirement contravenes the Federal Rules of Civil and Appellate Procedure. They make two related arguments.

First, they contend the judge improperly "circumvent[ed] the limitations and requirements of" Fed. R. App. P. 7 (permitting the district court to require a bond "to ensure payment of costs on appeal") and Fed. R. App. P. 39 (governing calculation and determination of costs on appeal). (Appellants' Response to Motion to Dismiss Appeal, at 8.) But they fail to appreciate the non-exclusive nature of the bond provisions in these rules. True, Rule 7 allows a district court to require an appellant to provide security to cover the costs associated with the appeal.[3] If Rule 7 set forth the district court's *exclusive* authority to order a bond to cover appellate costs, they would be right to

---

[3] Generally, an award of costs covers only the expenses for "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39. Some courts have also concluded that, when provided for by statute, expenses like attorney fees may also be included in the calculation of costs. *See In Re Cardizem CD Antitrust Litig.,* 391 F.3d 812, 817 (6th Cir. 2004); *accord Azizian v. Federated Dep't Stores, Inc.,* 499 F.3d 950, 958 (9th Cir. 2007). Appellants did not seek a stay from the district court or this court. Accordingly, there was no need for a supersedeas or similar bond. *See* Fed. R. Civ. P. 62(d); Fed. R. App. P. 8.

4

complain; Hershey has not pointed to any rule or statute explicitly authorizing the court

to impose a bond to cover attorney fees and interest. However, nothing in Rule 7

forecloses the parties from reaching their own agreement to provide broader security for

appeals. Here, the judge imposed the bond under paragraph 5.3 of the class action

settlement agreement, which explicitly provides for security for all of the expenses

secured by the court-ordered bond:

> Because any appeal by an objecting Class Member would
> delay the payment under the Settlement, each Class Member
> that appeals agrees to put up a cash bond to be set by the
> district court sufficient to reimburse Class Counsel's appellate
> fees, Class Counsel's expenses, and the lost interest to the
> Class caused by the delay.

(Appellants' App'x Vol. XI at 3817-18.) As the judge observed, Appellants failed to

timely object to the provision's requirement of security for appellate fees, class counsel's

expenses, and lost interest. They are therefore bound by it.[4]

---

[4] Although Appellants did not timely raise to the district court the objection they
make here, the timely Objection of Thomas Lahey, filed on September 18, 2012, took
exception to the "additional 5% fee" for class counsel "in the event of an appeal by any
objector." Lahey's objection argued the appeal-bond provision in paragraph 5.3
amounted to an attempt by class counsel "to obtain a multiple recovery of attorney fees
on appeal." (Appellants' App'x Vol. III at 667 n.2.) As the focal point of this argument
was the attorney fee award to class counsel, it cannot be fairly read as a refusal to agree
with the settlement agreement's requirement of security for lost interest, counsel's
expenses, and costs. Nor does it even suggest the provision itself was impermissible
because, as Appellants now argue, it contravenes the Federal Rules of Appellate and
Civil Procedure.

In their opposition to Hershey's district court motion to require the bond as a condition of permitting this appeal, Appellants made the same arguments they raise here. In response, the district judge criticized them for failing to "present any authority demonstrating that, pursuant to such an explicit fee-shifting agreement, the court may not enforce that agreement to the extent the appeal causes additional expenses and delays to the settlement class." (*Id.* at 3819.)

In their briefing here, they repeat the arguments made to the district judge without meaningfully addressing his criticism. Rather, they turn this criticism on its head by arguing *Hershey* failed to provide any authority "supporting enforcement of [the appeal-bond provision]." (Appellants' Response to Motion to Dismiss Appeal, Jan. 18, 2013, at 16.) This was not Hershey's burden. Ordinarily, a party contending an agreement contains unenforceable terms bears the burden of demonstrating unenforceability. *See, e.g., Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (concluding the burden of resisting a venue selection clause lies with the resisting party); *Carrothers Constr. Co. v. City of S. Hutchinson*, 207 P.3d 231, 241 (Kan. 2009) ("By placing the burden of proof on the party challenging [the enforceability of a clause in an agreement], we promote a public policy favoring settlement and avoidance of litigation, and allowing parties to make, and live by, their own contracts."). In any event, the court's authority to enforce the terms of a settlement agreement would seem so obvious as to be beyond challenge. *See United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) ("A trial court has the power to summarily enforce a settlement agreement entered into by the

6

litigants while the litigation is pending before it*.*"); *see also Advantage Props., Inc. v. Commerce Bank, N.A.*, 242 F.3d 387 (10th Cir. 2000) (unpublished) ("In the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.") (quotation omitted).

Appellants' second argument also lacks merit. They say the settlement agreement's appeal-bond provision is unenforceable because Fed. R. Civ. P 23(e)(5) "gives the members of a class the unequivocal right to file an objection to a settlement" but "does not authorize or permit the parties to the settlement to attach conditions to the filing of an objection which violate[s] the Federal Rules of Appellate Procedure." (Appellant's Response to Motion to Dismiss Appeal at 8.) This argument is mystifying. The appeal-bond provision applies to appeals, not to objections. Thus, enforcing the appeal-bond provision of the settlement agreement would not prevent or even discourage class members from asserting their rights to object to a proposed settlement. [5] And, as we have already concluded, the appeal-bond provision does not violate the Federal Rules of Appellate Procedure.

---

[5] Appellants tell us the appeal rights of objectors to a settlement agreement can henceforth be extinguished in every class action by the simple expedient of including in the settlement agreement an appeal-bond provision such as the one presented here. Not so! Had Appellants made their present argument to the district court in a timely fashion, there would be a genuine issue as to whether they had actually agreed to—and were therefore bound to honor—the appeal-bond provision.

Because both of their arguments lack merit, Appellants have failed to demonstrate why the appeal-bond provision in the settlement agreement is unenforceable. In the end, a "litigant cannot ignore an order setting an appeal bond without consequences to [his or her] appeal." *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004). And, particularly in class-action litigation, we realize some class members "may use an appeal as a means of leveraging compensation for themselves or their counsel" to the "detriment to class members [as a whole]." *Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295, 300 (5th Cir. 2007). Even though the appeal-bond provision addresses this problem—and Appellants tacitly agreed to this provision by remaining in the class and failing to timely object to it—they failed to honor it. Under these circumstances, we see no reason not to give Hershey and ExxonMobil the benefit of their bargain. Except as noted below, we dismiss the appeal.

## II.   THE GREGG TRUST APPEAL

The Marie Gregg Trust opted out of the *Hershey* class, and is therefore not subject to the appeal-bond order. Consequently, we address the merits of the Trust's appeal.

Because the Gregg Trust opted out, the district judge concluded it was free to pursue its own claims against ExxonMobil. But the judge also found its co-trustees, John Eldon Gregg and Keith Thomas Gregg, had not opted out and were, therefore, bound by the settlement agreement. He found the same to be true of the Trust's attorneys, who evidently were also members of the class. Thus, he concluded the Trust would not be able to pursue its claims against ExxonMobil using its current trustees and counsel.

8

The Gregg Trust appeals this part of the district court's order. It argues the judge erred by "ignor[ing] the fundamental distinction between a principal and its agent." (Appellants' Br. at 50.)

Before we address the Trust's argument, it is important to note what it is *not* arguing. It is not arguing the district court lacked authority to permanently enjoin all class members from pursuing the claims released in the settlement agreement. In any event, such an argument is unlikely to succeed. *See* Fed. Judicial Ctr., Manual for Complex Litigation, § 20.32, at 340 (4th ed. 2004) ("[W]here a class has been certified under [Fed. R. Civ. P.] 23(b)(3), and where class members have failed to avail themselves of their right to opt out and litigate their claims independently in state or federal court, a district court may enjoin those members from initiating or proceeding with civil actions in other state or federal courts"); *see also* 7B Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1798.1 (3d ed., April 2013 update) ("[A]n injunction . . . may be particularly appropriate once a [class action] settlement has been reached and judgment entered as a part of that settlement").

Nor is the Trust arguing its trustees are free to pursue their own claims against ExxonMobil. To the contrary, it concedes "the co-trustees of the Gregg Trust are also class members . . . who chose not to opt out of the class and are, therefore, subject to the injunction." (Appellants' Br. at 50.)

Finally, it does not dispute that at least some of its attorneys are members of the class. Instead, it argues only that the district court's order infringes on its "fundamental

9

right" to choose its own lawyer. (*Id.* at 51 (quoting *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 442-43 (1985) (Stevens, J., dissenting))).[6]

The Trust's appeal actually turns on whether a district court has the authority to enjoin a class member from pursuing a non-class member's claim. It says the district court had no such authority here, but we disagree. The district court had the authority to enjoin class members from pursuing released claims either as principals or as agents.

To begin, the Trust does not offer any legal authority to the contrary. Its only authority stands for the uncontested proposition that a court cannot enjoin a party not before it. But that is not what the district court did here. The court enjoined parties who *are* members of the class, some of whom also happen to be the Trust's agents. The Trust's legal authority is not on point.

_____

[6] Indeed, the Trust concedes that two of its attorneys are members of the class. (*See* Reply Br. 20 n.15.) Admittedly, it also argues there was insufficient evidence to show its other attorneys were class members. But it makes this claim for the first time in a footnote in its reply brief. (*See id.*) And "[a]rguments raised in a perfunctory manner, *such as in a footnote*, are waived." *United States v. Berry*, 717 F.3d 823, 834 n.7 (10th Cir.) (emphasis added; internal quotation marks omitted), *cert. denied*, 134 S. Ct. 495 (2013). What is more, it never explains which of its attorneys are class members and which are not. Worse, it never actually claims that some of its attorneys are *not* class members. "We will not manufacture arguments"—or claims—"for an appellant." *Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001) (internal quotation marks omitted). "[A] bare assertion"—let alone *no* assertion—does not "preserve a claim, particularly when, as here, a host of other issues are presented for review." *Id.* We decline to consider whether any of the Gregg Trust's attorneys are not class members.

Moreover, the Trust's position is inconsistent with the settlement agreement. According to the agreement, by remaining members of the class, each of the trustees and counsel "acknowledge[d] and agree[d] that he, she, or it is *concluding the Litigation*, and accepting their share of the Settlement Fund and other consideration described herein, as a full, final, and complete compromise and settlement of claims and controversies." (Appellants' App'x Vol. II at 362 (emphasis added).) In the agreement, the term "Litigation" included "all facts, contentions, allegations, disputes, and other matters related to . . . *Willie Jean Farrar, et al. vs. Mobil Oil Corporation*, Case No. 01-CV-12"—the very case where, prior to the *Hershey* settlement, the Trust, its trustees, and its counsel had been litigating their claims. *Id.* at 347–48. Further, the trustees and counsel agreed to "not, . . . on [their] own behalf *or by or through others*, sue, instigate, or assert against [ExxonMobil] any claims or actions on *or concerning* the Released Claims," *id.* at 362 (emphasis added), which include "any and all causes of action, . . . that are, were, or could have been asserted in the Litigation," *id.* at 349—*e.g.*, the Trust's claims against ExxonMobil in the parallel state court class action. Thus, by not opting out, the trustees and counsel agreed to not participate any further in the Trust's or any other entity's related litigation against ExxonMobil.

Furthermore, the district court unquestionably had the power to enjoin not only parties to the litigation before it but also those acting in concert with such parties. *See* Fed. R. Civ. P. 65(d)(2)(C); *see also Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13-14 (1945) (explaining that the purpose of this rule is to keep parties from "nullify[ing] a

11

decree by carrying out prohibited acts through aiders and abettors"). The district court did precisely that: it enjoined not only class members (*i.e.*, the individual trustees and the attorneys) but also those acting in concert with them (*i.e.*, the Trust if it still was being run by trustees who are class members or still being represented by attorneys who are class members). Specifically, the judge explained, "Absent any appointment of new trustees and employment of different counsel, any action by the Trust necessarily reflects action in concert [with] persons subject to the court's jurisdiction." (*See* Appellants' App'x Vol. XI at 3681.) Accordingly, even accepting Appellants' premise that the Trust is a distinct legal entity from its trustees and counsel, absent a change in its composition to remove the latter entities, the district court's injunction would bar the Trust's litigation activity as an aider and abettor of its constituent trustees and counsel who are class members.

The Trust counters that this result infringes on its "fundamental right" to choose its own lawyer. (Appellants' Br. at 51.) But the order does not bar the Trust from choosing its own lawyer. The Trust remains free to hire whatever eligible lawyer it wants. Present counsel's own decision makes them ineligible to represent the Trust. In this case, present counsel chose to remain in the *Hershey* class, with all the costs and benefits attending class membership. Their choice renders them unavailable to pursue this litigation any further, and the Trust may not act in concert with them if it prosecutes any released claims.

12

For the foregoing reasons, we affirm the district court's order as to the Gregg

Trust's trustees and counsel.

## III.    FEE APPLICATION

Counsel for the Trust and the objectors—the law firms of Fleeson, Gooing,

Coulson & Kitch, LLC, and Kramer, Nordling & Nordling, LLC—appeal from the district

judge's decision to deny them a portion of class counsel's fees.[7]  We review fee award

decisions for abuse of discretion.  *Anchondo v. Anderson, Crenshaw & Assocs.*, 616 F.3d

1098, 1101 (10th Cir. 2010).

After the settlement's preliminary approval, the law firms submitted an application

for two-thirds of class counsel's attorney fee award.  The judge denied the application as

untimely, improper, and without merit.  On the merits, he concluded the law firms did not

materially benefit the class, even though they filed an earlier class action in state court

and won partial summary judgment in that case.  He pointed to their lack of cooperation

with class counsel and repeated efforts to derail the *Hershey* class, including the firms'

opposition to class certification and support for some of ExxonMobil's defenses.  These

---

[7] The parties appear to be in disagreement over whether the law firms are members of the class and are thus bound by the settlement agreement's appeal-bond provision.  We need not resolve this debate.  Even if the law firms are subject to that provision, they are not named in the district court's appeal-bond order.  Besides, their appeal is easily resolved.

actions, he reasoned, offset any benefit conferred by the law firms' work in the state court class action.

On appeal, the law firms first claim their fee application was in fact timely and properly filed under Federal Rules of Civil Procedure 23(h) and 54(d). Rule 23(h) states an application for attorney's fees "must be made by motion under Rule 54(d)(2) . . . *at a time the court sets*." Fed. R. Civ. P. 23(h)(1) (emphasis added). The judge set September 7, 2012, as the deadline for attorney fee applications, but the law firms' application was not submitted until September 21. Their application was untimely under Rule 23(h).

The firms counter that the September 7 deadline applied only to class counsel. But they do not proffer an alternative Rule 23(h) deadline and cannot have it both ways: They cannot, on the one hand, say their application was timely under Rule 23(h), but, on the other, say the district court's only Rule 23(h) deadline did not apply to them.

Granted, the judge treated their fee application as an objection to the settlement, rather than a Rule 23(h) motion. And as an objection, the fee application was timely; it was filed on the deadline for submitting objections, September 21. But as an objection, the fee application was also improperly filed. The class notice required all objections to include "[a] detailed statement of the specific legal and factual basis for each and every objection, including a list of any legal authorities, witnesses, and exhibits the objector may seek to use at the [fairness hearing]." (Appellants' App'x Vol. II at 560.) The law firms' initial fee application appears to contain no such statement and they do not contend

14

otherwise.  Indeed, they submitted no evidentiary support until weeks later and some of their evidence was not submitted until the day before the final fairness hearing.  In a complex class action such as this, where the law firms' evidence filled thousands of pages, the judge needed time to evaluate their evidence, certainly more than one day before the fairness hearing.  We do not address the untimely evidence and we agree with the trial judge:  the law firms' fee application was filed without sufficient evidentiary support.  *See* Manual for Complex Litigation, *supra*, § 21.724, at 338 ("The party seeking fees has the burden of submitting sufficient information to justify the requested fees and taxable costs.").

In sum, we decline to address the merits of the law firms' fee application.  Whether as a Rule 23(h) motion or as an objection, it was procedurally defective, and the law firms—both of whom are very experienced in oil and gas class actions—offer no excuse for their delay.  On this basis, we affirm the order as to the law firms' fee application.

## IV.    VOLUMES FILED UNDER SEAL

ExxonMobil, in coordination with Hershey, filed two volumes of the Appellees' Supplemental Appendix under seal.  This court issued an order noting the materials in these two volumes did not appear to meet the privacy and redaction criteria identified under 10th Cir. R. 25.5 and Fed. R. App. P. 25(a)(5).  The order directed the parties to indicate "whether and why the identified materials need to be filed under seal with this

15

court, and, if so, how long the materials need to remain under seal." (Order of May 24, 2013, at 2.)

"A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011). "To do so, 'the parties must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process.'" *Id.* at 1135-36 (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). We are "not bound by the district court's decision to seal certain documents below" and retain our "own authority to decide whether the parties may file documents under seal in this Court." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (internal quotation marks omitted).

According to ExxonMobil these volumes "contain specific references to and formulate opinions based on confidential commercial competitive information of third parties who are not litigants in this matter." (ExxonMobil's Response to the Court's May 24, 2013, Order Regarding Documents Submitted Under Seal, at 1.) It requests these documents be kept under seal until the appeal terminates and requests the return of these materials thereafter. Hershey took no position with respect to the sealing of these records. Appellants, including the Gregg Trust and the law firms of Fleeson, Gooing, Coulson & Kitch, LLC and Kramer, Nordling & Nordling, LLC, did not object to the sealing of these volumes.

16

As ExxonMobil points out, we have "supervisory power over our own records and files" and can appropriately deny access to these materials when they might be used "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978). Here, the rationale for protecting these records is even stronger, as the records could harm the competitive interests of third parties. Moreover, given our disposition of this matter, this is not a situation where the documents in these volumes were necessary "to determine [the] litigants' substantive legal rights." *See Colony Ins. Co.,* 698 F.3d at 1242. These circumstances warrant the maintenance of the seal on these volumes.

However, ExxonMobil has cited no authority for its request for the return of these sealed volumes and has not indicated why the retention of these materials under seal is insufficient to protect the commercial interests involved. For these reasons, we deny its request for their return.

## V. CONCLUSION

For the reasons stated above, the appeal docketed as 12-3309 (addressing the district court's approval of the class-action settlement agreement) is AFFIRMED with respect to the Gregg Trust issue and the application of the law firms of Fleeson, Gooing, Coulson & Kitch, and Kramer, Nordling & Nordling for attorney fees. In all other respects, it is DISMISSED. As to the appeal docketed as 13-3029 (addressing the district court's order granting the requested appeal bond), we AFFIRM. We ORDER Volumes X and XI of the Appellees' Supplemental Appendix to be retained under seal. We DENY

17

ExxonMobil's request for the return of these volumes following the termination of these appeals.

**Entered by the Court:**

**Per Curiam**