**TEXAS, OKLAHOMA AND EASTERN RAILROAD COMPANY, a Corporation, Plaintiff in Error,**

v.

**Brooks CAMPBELL and Beatrice Campbell, Defendants in Error.**

No. 42328.

Court of Appeals of Oklahoma, Division No. 20.

Oct. 13, 1970.

Rehearing Denied Nov. 9, 1970.

Watson, Ess, Marshall & Enggas, Kansas City, Mo., Elbert Cook, DeQueen, Tom Finney, Idabel, for plaintiff in error.

Vester Songer, Hugo, for defendants in error.

SIMMS, Judge.

Brooks Campbell and Beatrice Campbell, husband and wife, as plaintiffs, instituted this action to recover damages for injuries suffered in a one-car automobile accident allegedly caused by the Texas, Oklahoma & Eastern Railroad Company (Defendant).

On a clear day at approximately 1:30 P.M., Mrs. Campbell, a passenger in the automobile driven by her 18-year old brother, Douglas Sheridan, was traveling north on a section line, black top road 1.9 miles north of Valliant, Oklahoma, to a point where a railroad right-of-way and trestle of Defendant's pass at about a 45 degree angle to the northeast over the section road. The road and trestle are located in hilly terrain, and as the trestle is approached from the south, it, and the tracks, lie hidden in a slight valley or depression until a hill or crest,

approximately 350 feet south of the underpass, is passed.

Seen from the south the trestle is actually somewhat off to the right side of the county road; and the road, upon meeting the tracks' embankment, jogs first to the right, in an abrupt northeasterly direction paralleling the tracks' embankment, and then, at the actual underpass, makes a sharp right-angle jog to the left in a northwesterly direction to pass under the trestle. Only when under and through the underpass does the road again straighten out along the north-south section line alignment. A diagram of the scene is shown here.

[A3221]

Defendant laid its track and trestle in 1908. The road and underpass were constructed in 1939 by the Board of Commissioners of McCurtain County, in cooperation with the WPA. Thereafter, in 1946, the County Commissioner caused the road to be black topped and a concrete slab to be placed under the trestle. After the road was improved, the County Commissioner put up signs on each side of the railroad trestle and at the hill crest to the south warning of the approach to the underpass, and attempted to maintain these signs. It is uncertain,

however, whether these signs were up on the date of the accident. There was no evidence that either the Corporation Commission of the State of Oklahoma or the Board of Commissioners of McCurtain County had ever issued any order directing the defendant to either construct, maintain, repair, or modify the railroad underpass before, during, or after its construction.

The accident occurred when Sheridan crested the hill at a rate of speed that left him unable to negotiate the jog. Instead, the automobile crashed into the defendant's embankment, after leaving 55 feet of skidmarks. Since the defendant's right of way extends 150 feet to either side of the center line of the tracks, the site of the accident was upon the right-of-way, though not upon either the tracks nor the highway. There was also testimony of water standing in the underpass.

The Plaintiffs' theories of recovery were (1) that the Defendant railroad's underpass was dangerous to motorists in its situation, construction, and maintenance; and (2) that the Defendant failed in a duty to post signs warning motorists of the danger. Plaintiffs contend that Defendant was non-delegably liable for these circumstances, irrespective of the tracks', trestle's, and road's ownership and chronology of construction. Plaintiffs prevailed in securing from the trial court instructions which sustained the foregoing contentions and placed them before the jury for factual determination. After Defendant's demurrer and motion for a directed verdict at the conclusion of the evidence were overruled, the cause was submitted to the jury as outlined above. The jury returned a verdict for the Plaintiffs.

The defendant does not contest nor deny that a railroad is non-delegably liable for its legal duties and obligations to the motoring public under proper circumstances. Nor are these non-delegable duties in any way diminished by the mere fact that the road may have been constructed subsequent to the tracks. Chicago, R. I. & P. Ry. Co. v. Taylor, 79 Okl. 142, 192 P. 349 (1920).

We limit our conclusion to the arguments in the briefs, with the supporting authority contained therein, and the record presented. The sole questions, therefore, are whether (1) the physical situation or lay of the trestle and underpass, and/or (2) the failure to post, or maintain, warning signs, constituted violations of any duties owed by the Defendant to the Plaintiffs for which liability will attach. Defendant cites no affirmative authority relieving itself of liability here, but argues that the statutory theories relied on by Plaintiffs, encompassed in the trial court's instructions, simply failed to create or demonstrate any duty toward Plaintiffs whose violation by Defendant could have been the proximate cause of the Plaintiff's injuries.

The statutory provisions relied on by Plaintiffs to sustain their first theory of liability, the allegedly inherent danger in the "lay" of the trestle and underpass, are 66 O.S. 1951, §§ 7(5), 123, and 128.

Section 7(5) is merely a portion of a lengthy catalog of *powers* conferred upon railroad companies in general, and does not itself place any affirmative duties or liabilities upon the railroad to the motoring public. Section 123 states that a railroad has the duty to "maintain and keep in good repair all bridges, with their abutments, which such corporation shall construct for the purpose of enabling its road to pass over or under any turnpike road * * *" This Section therefore clearly burdens railroad companies with the duty of maintaining in good repair all bridges, viaducts, and underpasses of railways with public roads, but is not applicable here since it is not the *repair* of Defendant's trestle or *maintenance* of the abutment that is said to be the proximate cause of Plaintiffs' injuries, but only the trestle's and abutment's physical location. In Atchison, Topeka and

Santa Fe Ry. Co. v. Coulson, Okl., 371 P.2d 914 (1962), cited by Plaintiff, the issue was in fact the structural disrepair of the railway's bridge, as opposed to its mere static location.

■ Section 128 of Title 66 likewise burdens a railroad with the duty to "construct a crossing across that portion of its track, roadbed or right of way over which any public highway may run, and maintain the same unobstructed, in a good condition for the use of the public, and to build and maintain in good condition all bridges and culverts that may be necessary on its right of way at such crossing * * *." Plaintiffs read into Chicago, R. I. & P. Ry. Co. v. Taylor, 79 Okl. 142, 192 P. 349 (1920), authority for interpreting Section 128 as imposing upon Defendant thereunder the additional obligation, in effect, to completely redesign or reconstruct an underpass constructed by the County, and over the construction of which Defendant had (and has) no control. While the *Taylor* case, supra, under the facts therein, does establish a railroad's liability regardless of which was constructed first, road or railroad, we do not feel that its language can be so stretched to the point desired by Plaintiffs, at least not without some order or authority from the Board of County Commissioners (which has jurisdiction over the road), or the Corporation Commission (which has jurisdiction over the railroad). Furthermore, in reading Section 128 on its face, it, like Section 123, appears to govern the obligation to initially construct, and thereafter keep in good repair, bridges, viaducts, and underpasses; and as discussed with Section 123, supra, the question of the construction or repair of Defendant's trestle is not in issue here, but only its location and geographical configuration with the road.

We conclude that Sections 7(5), 123 and 128 of Title 66 cannot sustain any liability by Defendant for the lay of its trestle and underpass.

■ Plaintiffs' other theory of statutory liability, that of failure to post signs along the roadway warning motorists of the jog, depends, if at all, on Section 124 of Title 66, which provides that a railroad "must erect suitable signs of caution at each crossing of its road with a public highway * * *." While Plaintiffs strenuously argue that "crossing" includes not only "on-grade" crossings, but also "over-grade" and "under-grade" crossings (see 17 O.S.1951, § 82), we feel that the obvious legislative purpose in Section 124 was to have warnings posted where there could be the possibility or danger of collisions between *trains* and cars. Such can occur only at "on-grade" crossings. The crossing here being an underpass with no possibility of collision between train and car, we do not feel Defendant violated any Section 124 duty towards Plaintiffs.

Having examined all the statutory provisions relied on by Plaintiffs, and not being advised of any common-law theory of liability, we are constrained to agree with Defendant's purely passive position that the record fails to demonstrate the existence of any duty owed by Defendant to these Plaintiffs, whose putative violation could have been a proximate cause of Plaintiffs' injuries.

The cause is accordingly reversed and remanded to the trial court with instructions to vacate the judgment therein, to sustain Defendant's motion for a directed verdict, and to enter, accordingly, judgment for the Defendant.

McINERNEY, P. J., and NELSON, J., concur.