2013 OK CIV APP 110

Sarah E. SHORT, individually and as Next Friend and Natural Parent of N.A.S. and J.P.S., both deceased, and individually and as Next Friend and Natural Parent of A.S., individually and K.S., individually, both minors, and John Short, Plaintiffs/Appellants,

v.

UNION PACIFIC RAILROAD COMPANY, Dale Kreifels, and Thomas Cooper, State of Oklahoma, ex rel. Oklahoma Department of Transportation, Defendants/Appellees.

No. 110700.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 19, 2013.

Rehearing Denied May 20, 2013.

Certiorari Denied Sept. 23, 2013.

Roy S. Dickinson, Norman, Oklahoma, for Appellants,

Robert D. Hart, Christopher D. Wolek, Lauren Donald, Tulsa, Oklahoma, for Appellees.

LARRY JOPLIN, Chief Judge:

¶ 1 Plaintiffs, Sarah and John Short, individually and as the natural parents of their four children, two of whom died as a result of the accident at issue and two of whom were injured in the accident, seek review of the trial court's order granting the re-urged summary judgment motion of Defendants, Union Pacific Railroad Co. and two of its employees, wherein Defendants alleged Plaintiff John Shorts' driving in violation of statute was the proximate cause of the collision.[1] In the appealed-from order, the trial court determined Plaintiffs' claims with regard to train speed, warning devices on the train and warning devices at the grade crossing were preempted by federal law, barring Plaintiffs' pursuit of a tort action with respect to those issues. The trial court also determined John Short's violation of 47 O.S. 11–701(A)(4) was negligence per se, was the proximate cause of the collision, and that no reasonable jury could find otherwise.[2]

■ ¶ 2 This appeal stands submitted for review without appellate briefs on the trial court record, pursuant to Rule 13(h), *Rules for the District Courts*, 12 O.S.2011, Ch. 2, App., and Rule 1.36, *Oklahoma Supreme Court Rules*, 12 O.S.2011, Ch. 15, App. 1. This court's standard of review of the trial court's grant of summary judgment is *de novo. Hoyt v. Paul R. Miller, M.D., Inc.*, 1996 OK 80, ¶ 2, 921 P.2d 350, 351–52. Summary judgment is proper when the evidentiary materials "establish that there is no genu-

ine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Shelley v. Kiwash Elec. Co-op.*, 1996 OK 44, ¶ 15, 914 P.2d 669, 674. "In reviewing a motion for summary judgment, all inferences and conclusions drawn from the evidence must be viewed in a light most favorable to the party opposing the motion[.]"

¶ 3 On October 14, 2007, John Short was driving his family's minivan near Welch, Oklahoma, on County Road South 4440, which ran parallel to the railroad tracks. John Short, Sarah Short and their four children were inside the vehicle. Mr. Short turned onto County Road East 110, running perpendicular to the railroad tracks, as he began to approach the railroad crossing at issue.[3] At the time of the accident, this crossing was marked by reflective crossbucks posted on both sides of the crossing, and no mechanical warning systems, lights or gates alerting to the approach of an oncoming train were present.

¶ 4 Mr. Short, after having turned onto County Road East 110 continued to the train tracks and then over them, at which time the rear passenger side of the Shorts' minivan was struck by the train. The Shorts' two sons, who had been seated in the back of the van, were ejected from the vehicle and died at the scene. The Shorts' two daughters were injured and taken to the hospital.

¶ 5 The Shorts filed their petition in the trial court on March 16, 2009. Plaintiffs alleged Defendants had failed to exercise reasonable care to avoid injuring the public and committed negligence, gross negligence, and demonstrated reckless and intentional disregard for public safety. Plaintiffs claimed the train's audible warning was not

---

1.  On May 25, 2012, pursuant to an order of the Supreme Court, Plaintiffs/Appellants filed a notice to the court advising that their claims against the State of Oklahoma were "deemed dismissed" by operation of law, due to the fact that no summons was served upon the State within the time provided under 12 O.S.2004(I).

2.  11–701. Obedience to signal indicating approach of train:
    A.  Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driv-

er of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
    . . .
    4.  An approaching railroad train is plainly visible and is in hazardous proximity to such crossing[.]

3.  This crossing was identified as USDOT–AAR ID No. 413500P.

timely given to warn of the train's approach, nor was it loud enough to comply with federal requirements.[4] In addition, Plaintiffs alleged visual warning of the train's approach was also inadequate, conditions at the grade crossing were hazardous and in need of repair, obstructions to visibility were present at the crossing, the railroad had failed to work with state authorities to properly improve the conditions, train operations contributed to the accident, devices at this crossing were not in compliance with the Manual on Uniform Traffic Control Devices, and these deficiencies in Defendants' conduct, training and operations resulted in the injuries to Plaintiffs. Plaintiffs sought actual and punitive damages. Defendants answered the petition on May 21, 2009, in essence denying all of Plaintiffs' claims and asserting John Short's own conduct was the proximate cause of the accident.

¶ 6 Thereafter, Defendants filed both a motion for summary judgment and a separate motion for partial summary judgment on June 4, 2010. The motion for summary judgment was based upon the rationale of *Hamilton v. Allen*, 1993 OK 46, 852 P.2d 697, and *Akin v. Missouri Pacific Railroad Co.*, 977 P.2d 1040, 1998 OK 102. In both *Hamilton* and *Akin*, the appellate court affirmed the trial courts' summary judgments based upon the plaintiffs' violations of statute, which the Oklahoma Supreme Court found in both the *Hamilton* and *Akin* plaintiffs' cases to be negligence per se and the proximate cause of the complained of injuries.

¶ 7 Defendants' motion for partial summary judgment addressed Plaintiffs' claims of lack of proper grade crossing warning devices, adequacy of locomotive warning devices (i.e., train horn), and train speed, Plaintiffs having alleged the train was moving too fast toward the imminent collision and should have slowed and/or applied brakes, thus giving Plaintiffs' vehicle enough time to clear the tracks. Defendants argued each of these claims was preempted by federal law.

¶ 8 In August 2011, the trial court denied both Defendants' motion for summary judgment and the partial motion for summary judgment. Defendants re-urged the *Akin/Hamilton* motion for summary judgment in February 2012, after submitting a video of the collision as an exhibit to their re-urged motion.[5] The trial court issued the appealed-from order on April 16, 2012, finding Plaintiffs' claims with respect to train speed, warning devices on the train and warning devices at the grade crossing were claims preempted by federal law under the rationale of *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). The trial court further found the video conclusively demonstrated that John Short's negligence per se was the proximate cause of the collision. Upon review of the record, we affirm the trial court's order on summary judgment.

¶ 9 In the appealed-from order, the trial court commented that although the court believed the crossing in question should have had warning lights and/or additional warning devices installed, federal law preempted Plaintiffs' tort claims with regard to train speed, warning devices on the train, and warning devices at the grade crossing, based on the U.S. Supreme Court's pronouncement *Easterwood*, 113 S.Ct. at 1741–43.

¶ 10 In *Hightower v. Kansas City Southern Ry. Co.*, 2003 OK 45, ¶ 16, 70 P.3d 835, 843, the Oklahoma Supreme Court discussed the U.S. Supreme Court's preemption rationale in *Easterwood*, finding that the injured plaintiff's claims of negligence premised upon inadequate warning devices, excessive train speed and localized hazard conditions were preempted by federal law.

¶ 11 Similar to the excessive speed claims alleged in *Hightower*, the Plaintiffs in this case have alleged the train was traveling at

---

4. 49 C.F.R. 229.129, locomotive horn, decibel levels and testing requirements.

5. The video exhibit submitted under seal indicates it is unverified. However, the record does not reflect any objection on the part of Plaintiffs with respect to the validity or accuracy of the video. In Plaintiffs' response to Defendants' re-urged motion, Plaintiffs only objected with respect to the use of the video in support of the re-urged motion, because it was available to Defendants at the time the original motions were filed, and Defendants had not used the video as an exhibit when filing the earlier motions.

an excessive rate of speed and should have slowed as it saw the minivan was not stopping before reaching the tracks. The record reveals the train that hit the Shorts' vehicle was traveling at 49 miles per hour. The track in question is a class 4 track, for which the Federal Railroad Administration sets a maximum speed of 60 miles per hour. However, Union Pacific had limited the speed for the train at issue to 50 miles per hour, even if the track classification allowed for higher speeds.

¶ 12 Since the train was traveling both within the speed limit established by the federal regulations and Union Pacific's own more restrictive requirements, federal law preempts Plaintiffs' claims, because federal regulations have "substantially subsumed" this subject matter, in codifying the track classifications and speed requirements. *See Akin*, 977 P.2d at 1047 n. 30; *Hightower*, 70 P.3d at 845; *Easterwood*, 113 S.Ct. at 1742; 49 C.F.R. 213.9(a). The Dept. of Transportation, in adopting the track classifications and speed restrictions, did so after having examined and considered track conditions and conditions at the grade crossings.[6] *Hightower*, 70 P.3d at 845; *Easterwood*, 113 S.Ct. at 1742.

■■■ ¶ 13 Plaintiffs also allege the train should have slowed, because it was apparent the Shorts' vehicle was not stopping prior to reaching the tracks and the train impermissibly and recklessly barreled forward at a known obstacle, namely the Shorts' vehicle. However, the Oklahoma Supreme Court in *Hamilton*, 852 P.2d at 700, found the train operator has a right to assume the vehicle approaching will obey the law:

"[T]he operator of the train can assume the vehicle will obey the law." *Hamilton v. Allen*, 1993 OK 46, ¶ 13, 852 P.2d 697, 700. A train "engineer has a right to

assume that one approaching the crossing has not omitted ordinary precautions imposed by law and will stop in time to avoid injury." *Jester v. St. Louis–San Francisco Ry. Co.*, 1965 OK 180, ¶ 13, 413 P.2d 539, 541–542. Oklahoma law clearly imposes on the operator of a train the duty to stop only upon observation of an obstruction, whether human or vehicular, when the train operator knows or should know that the vehicle or person will not clear the crossing in time to avoid the collision. *See, e.g., Missouri Pac. R. Co. v. Gordon*, 1939 OK 322, ¶ 24 [186 Okla. 424], 98 P.2d 39, 43; *Missouri, O. & G. Ry. Co. v. Lee*, 1918 OK 551, ¶ 28 [73 Okla. 165], 175 P. 367, 372.

The duty of a motorist at a railroad crossing is different: "[A] vehicle nearing a railroad crossing must yield the right-of-way to an approaching train[.]" *Hamilton*, 1993 OK 46, ¶ 13, 852 P.2d at 700. A standard "lookout" instruction "does not adequately explain the duties of a motorist at a railroad crossing" where the motorist "has a continuing duty to remain alert at all times, including the time the tractor trailer remained on the tracks, until he reached a place of safety beyond the tracks." *Moore v. Burlington Northern R. Co.*, 2002 OK CIV APP 23, ¶ 13, 41 P.3d 1029, 1033. Failure to so instruct constitute[d] prejudicial error. *Id.*

■■ ¶ 14 Plaintiffs also complain the crossbucks at this crossing were inadequate to warn of the approach of any oncoming train. The trial court agreed, but found this claim too was preempted by federal law. The Oklahoma Supreme Court has held, in keeping with pronouncements from the U.S. Supreme Court, that federal law does not preempt state tort law in the area of inadequate signalization unless federally funded

---

6. Since the train was traveling within the speed limit established in the federal regulations, [the plaintiff's] common law negligence claims premised upon excessive train speed are therefore preempted by federal law. The Federal Railroad Safety Act of 1970 (FRSA), 45 U.S.C. 421–447 expressly preempts all [plaintiff's] claims based upon excessive train speed. Further, the U.S. Supreme Court has held that the maximum allowable speeds codified at 49 C.F.R. 213.9(a) "cover[ ] the subject matter of train speed with respect to track conditions, including conditions posed by grade crossings," and therefore, preempt common law tort claims asserting the train traveled at an excessive rate of speed. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 675, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Thus, pursuant to the FRSA and the rule in *Easterwood*, all [plaintiff's] excessive train speed claims are preempted.

*Hightower*, 70 P.3d at 845.

warning devices have been installed and are fully operational. *Akin,* 977 P.2d at 1050–51; *Hightower,* 70 P.3d at 849.[7] The devices at this crossing consisted of reflectorized, non-mechanical crossbucks. The record reveals the crossing in question was part of a "Federal–Aid Railroad Grade Crossing Project" initiated in 1981, the bulk of which was paid for from federal funds. The crossing in question, D.O.T. # 413 500P, was to receive two crossbucks and new posts as part of the project. At the time of the accident, the crossing had two crossbucks, one on each side of the tracks. Because the crossbucks, the warning devices implemented in the course of the grade improvement project and funded, at least in part, by federal funds were installed at the time of the accident, we must reach the same conclusion the court did in *Hightower.* The Plaintiffs' state tort law claims based on inadequate signalization are preempted by federal law.

¶ 15 Plaintiffs also allege the train horn did not sound within the audible decibel and duration requirements outlined in 49 C.F.R. 229.129. The federal regulations governing the decibel, duration and testing requirements for train horns is comprehensive and subsumed by the federal regulation. This is similar to the comprehensive regulations that address train speed and track classifications, as discussed in *Hightower,* 70 P.3d at 843–44. Because 49 C.F.R. 229.129 sets minimum and maximum sound level requirements, horn testing frequency requirements and horn specifications, we find this subject matter too is preempted by federal regulation.

¶ 16 Plaintiffs, in an attempt to circumvent federal preemption, argued that a localized hazard existed at this grade crossing in the form of the uneven, rough and unsafe roadway surface that led to the tracks, in effect distracting the driver. This uneven and rough surface caused Mr. Short's attention to be directed at the roadway instead of down the train tracks at the oncoming train.

¶ 17 A "specific, individualized hazard" at the crossing can mark an exception to federal preemption with respect to excessive train speed, if at the crossing there existed a localized hazard so that the train operator had a duty to slow or stop a train to avoid collision. *Hightower,* 70 P.3d at 846 (citing *Easterwood,* 113 S.Ct. at 1743). Here, Plaintiffs assert the local safety hazard was the unsafe and uneven roadway, which caused the Shorts' vehicle to be delayed and have difficulty passing over the tracks. Plaintiffs assert the train operator could have and should have observed the vehicle was not going to clear the tracks and slowed the train accordingly. It is Plaintiffs' position that had the train slowed, the vehicle would have cleared ahead of the train.

¶ 18 The U.S. Supreme Court in *Easterwood* declined to further define a "specific, individualized hazard." *Hightower,* 70 P.3d at 846–47. However, the Oklahoma Supreme Court examined this issue in *Myers v. Missouri Pac. R.R. Co.,* 2002 OK 60, 52 P.3d 1014. The Oklahoma Supreme Court found the conditions of the roadway, such as a steep grade and the angle of the crossing to the highway, were not specific individualized hazards, because these were all simply general conditions of the crossing and these defects would have already been accounted for in train speed regulations. *Myers,* 52 P.3d at 1028. As a result, federal preemption still applied. The poor quality of the grade crossing and uneven nature of the roadway in this case are like the steep grading that was present in *Myers.* Similarly, this road condition, though it may have distracted Mr. Short while he crossed the tracks, is not a local or individualized hazard

7. [F]ederal regulations implementing the Crossings Program addressed the design of grade crossing improvements. 23 C.F.R. 646.214(b). These regulations specify what constitutes "adequate warning devices," which must be installed at crossings "where Federal-aid funds participate in the installation of the devices." 646.214(b)(3) and (4). The U.S. Supreme Court has held that when federal funds participate in the crossing improvement project, these regulations "establish a standard of adequacy that 'determines the devices to be installed.'" *Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 354, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000) (quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 671, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). Both *Easterwood* and *Shanklin* held that where 646.214(b)(3) and (4) "are applicable, state tort law is preempted." *Easterwood,* 507 U.S. at 670, 113 S.Ct. 1732; *Shanklin,* 529 U.S. at 352, 120 S.Ct. 1467.

*Hightower,* 70 P.3d at 849.

that would mark an exception to federal preemption.

¶ 19 The trial court also found Mr. Short's violation of statute was negligence per se and was the proximate cause of the accident. This finding ultimately precluded all Plaintiffs' claims against Defendants. The trial court found Mr. Short drove his van in violation of 47 O.S. Supp.2002 11–701(A)(4), which requires a driver to stop and not proceed through the crossing when "[a]n approaching railroad train is plainly visible and is in hazardous proximity to such crossing[.]"

¶ 20 The trial court found that based upon the accident video and all the other evidence available on the record, the "approaching train was plainly visible and in hazardous proximity to the crossing in question." As a result, the court determined Mr. Short's own negligence and violation of the statute was the proximate cause of this accident.

¶ 21 Similar to the plaintiff's assertions in *Akin*, 977 P.2d at 1055, Plaintiffs in this case assert deficient safety measures at this crossing, such as no automatic gates or lights, caused the Shorts' accident. The *Akin* court found the absence of automatic gates merely afforded the plaintiff an opportunity that made the injury possible, but plaintiff's subsequent independent act caused the injury.[8] We must reach a similar conclusion here. The video demonstrates Plaintiff had an unobstructed view of the imminently approaching train as he came to the crossing, violating 47 O.S. 11–701(A)(4). The trial court's order granting Defendants' summary judgment on the issue of Plaintiff's negligence per se was not error.

¶ 22 The order of the trial court is AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.

---

**8.** "In other words, if the negligence complained of merely affords an opportunity that makes the injury possible and a subsequent independent act causes that injury, the opportunity is not the proximate cause of the injury ... This is so because Mr. Akin's action in entering the crossing, as conclusively established by the record, constitutes a supervening act of negligence which insulates the railroad from the legal consequences of its own lack of due care, if any." *Akin*, 977 P.2d at 1055–56.