FILED
United States Court of Appeals
Tenth Circuit

February 13, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BNSF RAILWAY COMPANY,

Plaintiff Counter Defendant -
Appellee/Cross-Appellant,

v.

C.A.T. CONSTRUCTION, INC.,

Defendant Counterclaimant -
Appellant/Cross-Appellee,

and

THOMPSON LOGISTICS, LLC,

Defendant - Appellant/Cross-Appellee.

Nos. 15-6230 and 16-6070
(D.C. No. 5:14-CV-00616-L)
(W.D. Oklahoma)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

This case arises out of an accident at a railroad crossing owned and operated

by The Burlington Northern & Santa Fe Railway Company (BNSF). Danny

Whisenhunt, a Thompson Logistics, LLC (Thompson) employee, was driving a

tractor-trailer through the crossing when it became high-centered on the tracks. A

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

few minutes later, a BNSF train collided with the tractor-trailer. The train, parts of the track, and the tractor-trailer were damaged. BNSF sued Thompson and the owner of the tractor, CAT Construction, Inc. (CAT) (collectively, Appellants) for damages, alleging that Appellants are vicariously liable for Mr. Whisenhunt's negligent driving. Appellants counterclaimed, alleging that BNSF's negligent construction and maintenance of the crossing caused the accident. The district court granted summary judgment in CAT's favor on BNSF's vicarious liability claim, and the remaining claims were tried to a jury.[1] The jury found Thompson 80% negligent and BNSF 20% negligent. The district court then denied BNSF's renewed motion for judgment as a matter of law. This appeal and cross-appeal followed. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for a new trial.

## I.    BACKGROUND

### A. *Factual History*

BNSF owns and operates the railroad crossing at issue, which is in Noble County, Oklahoma. It sits upon County Road 295, immediately north of where the county road intersects with U.S. Highway 64. County Road 295 is a public road.

The crossing at the time of the accident consisted of two rails immediately surrounded by timber planks and gravel roadway approaches leading to the crossing. The tops of the planks were not flush with the top of the adjacent roadway surface, but instead sat above the surface. And although BNSF's crossing design calls for the

---

[1] BNSF does not challenge this decision on appeal, and we therefore do not discuss this claim further.

2

top of each rail to be even or flush with the crossing's timber planks, there is evidence that the north rail protruded above the planks.

Moreover, the approaches angled down and away from the tracks, giving the crossing a humped profile. The crossing's south approach descended 25.6 inches over the 30 feet south of the rails. While the slope of the crossing's north approach at the time of the collision is unclear, afterward it was 6.7 inches over the 30 feet north of the rails. BNSF's right-of-way for the crossing was 100 feet: 50 feet north and 50 feet south of the center of the two rails. The approaches were within BNSF's right-of-way.

There were no lights or gates at the crossing, but the tracks were visible from the road. And although there is no evidence of any signs warning motorists of the steep approaches or of the protruding rail, crossbucks and a crossing sign alerted passersby of the crossing itself.[2] There was also an oil traffic sign, which, according to Mr. Whisenhunt, indicated that "oil field traffic [had] been passing through" and that it was safe to traverse the crossing.

At the time of the accident, Mr. Whisenhunt was a professional truck driver employed by Thompson. Mr. Whisenhunt testified that it was part of his job to know the height and width of his equipment, and to know how much clearance he had underneath his vehicle.

The trailer Mr. Whisenhunt hauled on the day of the incident had "normal"

---

[2] "Crossbucks are black-and-white, X-shaped signs that read 'RAILROAD CROSSING.'" *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1211 n.4 (10th Cir. 2008) (internal quotation marks omitted).

3

clearance underneath, although Mr. Whisenhunt testified he did not know exactly how much clearance it had. In any event, the trailer's landing gear was fully retracted, and it had been neither modified nor hung-up on a railroad track before the accident.

On June 16, 2012, Mr. Whisenhunt pulled off Highway 64 and turned north onto County Road 295 toward the crossing. He could see the railroad tracks ahead. He could also see the crossing was "a little bit" elevated from the road. Nothing obstructed his view of the crossing. And the crossing looked like others he had negotiated successfully in the past.

Mr. Whisenhunt traversed the crossing, at two or three miles per hour until he felt a bump. Upon exiting the vehicle, Mr. Whisenhunt discovered that the landing gear's foot had become caught on the north rail. The foot was bent backward and the product line (a pipe at the bottom of the truck) rested on the tracks. There was not enough clearance underneath the trailer, and the trailer high-centered on the tracks. The tractor-trailer was stuck.

Minutes later, BNSF's train collided with the trailer. The train was damaged, as were portions of the track. The tractor, owned by CAT, and the trailer, owned by Thompson, were total losses.

4

## B. *Procedural History*

BNSF sued Appellants for damages arising out of the collision. BNSF alleged that Mr. Whisenhunt's negligence caused the accident, and that both Appellants were vicariously liable for his negligence. Thompson admitted that it employed Mr. Whisenhunt, and that he was acting within the course and scope of his employment at the time of the accident.

But Appellants denied that Mr. Whisenhunt's negligence caused the accident. They counterclaimed, asserting that BNSF's negligent, or comparatively negligent, construction and maintenance of the railroad crossing caused the accident. Appellants argued that the trailer became stuck on the tracks because the crossing's approaches were too steep, and because the north rail improperly protruded above the timbers.

The district court ruled before trial that BNSF's duty to construct and maintain the crossing is limited to that portion of the roadway that intersects with the tracks. The remaining claims were tried to a jury. Several of the court's evidentiary rulings and jury instructions are challenged in this appeal. The facts concerning those claims are presented below as relevant to the legal issues they present.

The jury found Thompson 80% negligent and BNSF 20% negligent. In accordance with the jury verdict, the court entered judgment in BNSF's favor against Thompson in the amount of $280,000, and in CAT's favor against BNSF in the amount of $2,000. The court later denied BNSF's renewed motion for judgment as a matter of law, in which BNSF argued that Thompson committed negligence per se, which, according to BNSF, was a supervening cause absolving BNSF of any liability.

5

This cross-appeal followed.

## II.  DISCUSSION

Appellants contend that a new trial is warranted because the district court erred when it (1) concluded that BNSF's duty under Okla. Stat. tit. 66, § 128 to construct and maintain the crossing is limited to that portion of the public roadway intersecting with the tracks, (2) incorrectly instructed the jury on the extent of BNSF's duty to construct and maintain the crossing, and (3) excluded all evidence concerning the approaches and their alleged causation of the accident.

For its part, BNSF maintains that the district court erroneously denied its renewed motion for judgment as a matter of law. Alternatively, BNSF insists that it is entitled to a new trial because the district court declined to instruct the jury about the county's duty to construct and maintain the public road and the approaches at the crossing, and because the comments and actions of Appellants' counsel during trial had a prejudicial effect on the verdict.

We first address the issues Appellants raise before turning to the issues asserted by BNSF. Ultimately, we hold that a new trial is warranted because the district court erred in its ruling concerning the extent of BNSF's duty to construct and maintain the crossing, and because this error pervaded the court's ensuing jury instructions and evidentiary rulings. We next reject BNSF's argument that it is entitled to judgment as a matter of law. And because we conclude a new trial is warranted based on the errors Appellants identify, we need not address BNSF's alternative arguments for a new trial.

6

## A. *Appellants' Appeal*

As stated, Appellants contend the district court erred in defining the scope of BNSF's duty, instructing the jury, and excluding evidence. We address each issue in turn.

### 1. BNSF's Duty to Construct and Maintain the Crossing

In a motion for partial summary judgment filed in the district court, Appellants argued that BNSF's duty under Okla. Stat. tit. 66, § 128 to construct and maintain its crossing extends across its entire 100-foot right-of-way and includes the approaches within the right-of-way. The district court disagreed, and ruled that BNSF's duty is limited to that portion of the roadway intersecting with the tracks. Appellants contend on appeal that the district court erred in its interpretation of § 128. We agree.

The substantive law of Oklahoma, the forum state in this diversity action, governs our analysis. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). The existence of a duty under Oklahoma law is a question of law we review de novo. *Bray v. St. John Health Sys., Inc.*, 187 P.3d 721, 723 (Okla. 2008). We also review de novo the district court's interpretation of Oklahoma law, including its interpretation of a state statute. *Vincent*, 52 F.3d at 896; *see Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

Section 128 provides:

> It shall be the duty of every railroad company or corporation doing business, or operating a line of railroad, within this state, to construct a crossing across that portion of its track, roadbed or right-of-way over which any public highway may run, and maintain the same unobstructed, in a good condition for the use of the public . . . .

7

The Oklahoma Supreme Court has long held that the duty imposed under the statute to construct and maintain a crossing requires a railroad to maintain the public highway unobstructed in a safe condition across its entire right-of-way. *Chicago R. I. & P. Ry. Co. v. Taylor*, 192 P. 349, 354, 356 (Okla. 1920). The court compared the statutory duty under § 128 to the common law duty "to do all those things necessary to restore the highway, including the construction of bridges, *approaches*, or lateral embankments, rendered necessary by the construction of the railroad tracks or grades over or through the highway." *Id.* at 352 (emphasis added). It explained that "[t]he duty to maintain the highway across its entire right of way takes nothing directly from the railroad company," because any related cost "is compensated for by the consequential reduction and prevention of loss, which otherwise an obstructed and unsafe highway inflicts upon the railroad itself." *Id.* at 354.

In *Taylor*, for example, the court held that the railway's duty extended to a three-foot excavation that was within its right-of-way but not adjacent to the tracks. *See id.* at 357–58. And in *Midland Valley Railroad Co. v. Townes*, 64 P.2d 712, 715 (Okla. 1936), the Oklahoma Supreme Court likewise concluded that the railroad's duty to construct and maintain its crossing extended "over its entire right of way," including over the inclined, muddy approaches in which plaintiff's vehicle became stuck before being hit by a train.

These authorities establish that BNSF's statutory duty to construct and maintain its crossing extends to that portion of County Road 295 that passes through its right-of-way. Contrary to the district court's ruling, this includes the approaches

8

that fall within that area.

BNSF disagrees and cites two Oklahoma decisions that it believes support the district court's narrower conclusion: *Myers v. Missouri Pacific Railroad Co.*, 52 P.3d 1014 (Okla. 2002), and *Texas, Oklahoma & Eastern Railroad Co. v. Campbell*, 477 P.2d 705 (Okla. Civ. App. 1970). But neither case calls into question the continued validity of *Taylor* or alters our construction of the statute.

In *Myers*, plaintiffs brought a wrongful death action after the decedent's vehicle entered a railway crossing, despite flashing warning lights, and collided with an oncoming train. 52 P.3d at 1018. The court first held that some of plaintiffs' negligence theories were preempted by federal regulations. *Id.* at 1023. The court next considered whether, for purposes of the remaining negligence theories, the trial court erred in refusing to instruct the jury on the railroad's duty under certain state statutes, including § 128. *Id.* at 1028–29. In doing so, the court paraphrased § 128, stating that it "requires the railroad to maintain the surface of the roadway traversing the tracks unobstructed and in good condition for the use of the public." *Id.* at 1029. But the court was not attempting to interpret or apply the statute, which the court set forth in its entirety in a footnote. *Id.* at 1029 n.56. Instead, it simply provided context for its holding that the trial court had not erred in refusing to give the instruction because § 128 "was not relevant to any issue in this case." *Id.* Contrary to BNSF's assertion, *Myers* cannot fairly be read as a departure from the Oklahoma Supreme Court's prior decisions interpreting the duty imposed by § 128 to encompass the entire right-of-way.

9

*Campbell*, a decision from the Oklahoma Court of Appeals that could not undermine prior Oklahoma Supreme Court precedent, is also inapposite. There, the driver failed to make a sharp turn, causing his vehicle to leave the road and crash into an embankment on the underpass of a railroad's trestle. 477 P.2d at 707. The site of the accident was within the railroad's right-of-way, but it was not on the tracks or the public highway. *Id.* The jury entered a verdict in favor of plaintiffs based on a theory that the railroad had breached its statutory duties, and the railroad appealed. *Id.* The court of appeals reversed, concluding that § 128 was inapplicable because plaintiffs claimed that the proximate cause of their injuries was the trestle's geographic configuration with the road—not the construction or maintenance of the trestle. *Id.* at 708. As a result, the court had no occasion to opine on the extent of the duty imposed under § 128.

BNSF next maintains that its duty is limited because the county in which a public road sits has the exclusive responsibility to construct and maintain the road. Okla. Stat. tit. 69, § 601 states:

> It shall be the duty of the board of county commissioners in each county to construct and maintain [the] county highways . . . . The boards of county commissioners of the various counties shall have exclusive jurisdiction over the designation, construction and maintenance and repair of all of the county highways and bridges therein.

Under §§ 601 and 128, the Oklahoma legislature allocated responsibility for the construction and maintenance of public roads within a county. In general, a county has exclusive responsibility under § 601 to construct and maintain its highways and bridges. But under § 128, the legislature created an exception to this

10

general rule, and imposed upon railroads the duty to construct and maintain its crossings—including any public highways traversing its rights-of-way—unobstructed and in a safe condition.

To the extent §§ 601 and 128 conflict, we turn to Oklahoma's rules of statutory construction. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1224 (10th Cir. 2016) ("When interpreting a state statute in a diversity case, this court must apply state rules of statutory construction." (internal quotation marks omitted)). "[W]here there are two statutory provisions, one of which is special and clearly includes the matter in controversy, and prescribes different rules and procedures from those in a general statute, the special statute, and not the general statute applies." *Indep. Sch. Dist. No. 1 v. Bd. of Cty. Comm'rs*, 674 P.2d 547, 549–50 (Okla. 1983). Section 601 is a general statute concerning a county's duty to construct and maintain its highways and bridges; it does not address the precise situation presented here. Section 128, however, is tailored to the present situation. It therefore controls.

BNSF further argues that it is liable under § 128 only for obstructions that it affirmatively creates. We find no support for this proposition. The Oklahoma Supreme Court has explained that a railroad must keep a public highway traversing a crossing in such a condition as to not materially impair its usefulness as a highway. *Atchison, T. & S.F. Ry. Co. v. Wooley*, 189 P. 180, 182 (Okla. 1919). In describing a railroad's duty to keep a crossing unobstructed, the court has not distinguished between whom or what creates the obstruction giving rise to an injury. *See Missouri-Kansas-Texas R.R. Co. v. Hayes*, 445 P.2d 249, 252 (Okla. 1968) ("As far as we have

11

been able to ascertain from the cases on the subject, it makes little, if any, difference, whether the conditions, which render the crossing dangerous, are due to objects on the railroad's right-of-way, or to the terrain, or to vegetation, or other obstructions, on other land.").

Finally, BNSF spends significant effort in its briefs, providing a summary of the various governmental agencies that have been vested with regulatory authority over the state's railroads. BNSF does so in an attempt to show that the responsibility over railroad crossings has changed since the 1920s and 1930s, during which the Oklahoma Supreme Court decided *Taylor* and *Midland Valley*. Although there have been legal developments affecting railways during the past century, BNSF points us to nothing that abrogates or overrules the Oklahoma Supreme Court's interpretation of § 128. In the absence of such direction, we follow existing precedent from Oklahoma's highest court. *See Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996) (stating that a federal court sitting in diversity is "to ascertain and apply the most recent statement of law by the state's highest court" (internal quotation marks omitted)). And we are reluctant to alter such pronouncements in the absence of clear guidance from that state's highest court. *See Taylor v. Phelan,* 9 F.3d 882, 887 (10th Cir. 1993) (recognizing that federal courts "are generally reticent to expand state law without clear guidance from [the state's] highest court").

Accordingly, we hold that BNSF's duty to construct and maintain the crossing extends to that portion of County Road 295 that passes through BNSF's right-of-way, including the approaches within the right-of-way. The district court's contrary ruling

12

was error. As explained below, this ruling led to erroneous jury instructions and evidentiary decisions, which require a new trial.

### 2. The District Court's Jury Instructions Concerning BNSF's Duty

We turn now to Appellants' claim that the district court erroneously instructed the jury on BNSF's duty to construct and maintain the crossing. "We review a district court's decision to give a particular jury instruction for abuse of discretion, but we review de novo legal objections to the jury instructions." *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1154 (10th Cir. 2012) (internal quotation marks omitted). "[W]e will find an abuse of discretion if the challenged instruction incorrectly states the governing law." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1248 (10th Cir. 1998). The "substance of a jury instruction in a diversity case is a matter of state law." *City of Wichita v. U.S. Gypsum Co.*, 72 F.3d 1491, 1494 (10th Cir. 1996). "If we determine that the trial court erred, we must then determine whether the error was prejudicial" enough to warrant reversal. *Lederman*, 685 F.3d at 1155.

Before trial, Appellants asked the district court to instruct the jury on BNSF's statutory duty under Okla. Stat. tit. 66, § 128 and *Midland Valley*. The district court declined, and Appellants objected on the record. Then during trial, Appellants called Bob Vincent as a witness. Mr. Vincent testified that he lives near the crossing, and that the crossing at the time of trial was "a lot better . . . than it used to be. . . . The county has raised the roadbed and instead of . . . the high pinnacle, it's flattened out." BNSF objected to Mr. Vincent's testimony. The court then gave the following limiting instruction to the jury:

13

Ladies and gentlemen of the jury, after the accident, the county, which is responsible for the approaches and the roadway and so forth, changed the approaches to the track crossing and flattened it out. That is not the responsibility of the railroad and the railroad had no responsibility for the approaches to the crossing. But after the accident, the county changed that and flattened it out. So I'm assuming that's what [Mr. Vincent is] talking about. I don't know what the witness is talking about. But you're not to consider that—that answer will be stricken and you're not to consider it in your deliberations.

Appellants contend the district court erroneously instructed the jury about BNSF's duty to construct and maintain the crossing because BNSF's duty actually extends over its entire right-of-way. As previously discussed, we agree that BNSF's duty under § 128 to construct and maintain the crossing extends to that portion of County Road 295 that passes through BNSF's right-of-way, including the approaches within the right-of-way. As a result, we hold that the district court (a) abused its discretion when it declined to instruct the jury that BNSF's duty to construct and maintain the crossing extends to that portion of County Road 295 that passes through BNSF's right-of-way, including the approaches within that area; and (b) erred when it incorrectly instructed the jury during Mr. Vincent's testimony that the county, and not BNSF, is responsible for the road and approaches to the crossing. *See Webb*, 155 F.3d at 1248.

Having concluded that the district court incorrectly instructed the jury on the scope of BNSF's duty, we must next determine whether this error was prejudicial to Appellants. *See Lederman*, 685 F.3d at 1159. "[T]he judgment must be reversed if the jury might have based its verdict on the erroneously given instruction." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 867 (10th Cir. 2003) (internal quotation marks

14

omitted). "The 'might have' threshold . . . requires reversal even if that possibility is very unlikely." *Lederman*, 685 F.3d at 1159 (internal quotation marks omitted). Here, the district court's ruling on BNSF's duty and its later jury instructions in accordance with that ruling resulted in the jury being incorrectly instructed on a critical issue in the case: BNSF's duty to maintain its right-of-way in good condition. If the court had properly instructed the jury that BNSF is responsible for the roadway and approaches within the right-of-way, the jury might have found the railroad more responsible for the accident. Thus, the erroneous jury instruction prejudiced Appellants. We now consider Appellants' argument that this prejudice was compounded by the district court's evidentiary rulings.

### 3. The District Court's Evidentiary Rulings

Appellants finally contend that the district court erred when it excluded all evidence concerning the approaches and their alleged causation of the accident. The district court premised its decision to exclude this evidence on its prior ruling that BNSF's duty to construct and maintain its crossing is limited to that area of County Road 295 that traverses, or intersects with, the crossing. The court concluded that, in view of that ruling, all evidence relating to the approaches is irrelevant and unfairly prejudicial to BNSF. *See* Fed. R. Evid. 401 (providing that evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence"); *id.* 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

15

We review a district court's evidentiary rulings for an abuse of discretion. *Webb*, 155 F.3d at 1246. A district court abuses its discretion when its rulings are "based on an erroneous conclusion of law, a clearly erroneous finding of fact[,] or a manifest error in judgment." *Id.* If we conclude that the district court abused its discretion, the complaining party is entitled to a new trial "only when the error affected the party's substantial rights." *Id.* "The effect on the jury of evidence can only be prejudicial if it can be reasonably concluded that with or without such evidence, there would have been a contrary result." *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993).

Based on our conclusion that BNSF's duty extends to its entire right-of-way, we hold that the district court abused its discretion when it excluded all evidence of the approaches and their potential causation of the accident. And we can easily conclude that this error prejudicially affected Appellants' substantial rights. If the district court had instructed the jury that BNSF is responsible for the roadway and approaches within the right-of-way, and allowed it to hear evidence about the condition of the roadway and approaches, the jury reasonably may have found BNSF more than 20% negligent.

The district court committed prejudicial error when it gave legally incorrect jury instructions, and compounded that error by limiting the admissible evidence accordingly. We therefore reverse the judgment and remand for a new trial.[3]

---

[3] Because we conclude that a new trial is warranted based on these rulings, we need not reach BNSF's additional arguments in support of a new trial.

16

**B.** *BNSF's Cross-Appeal*

BNSF argues by cross-appeal that a new trial is unnecessary because it is entitled to judgment as a matter of law. For the reasons now discussed, we are not persuaded.

At the close of evidence, the district court instructed the jury on intervening cause, on negligence per se, and on Okla. Stat. tit. 47, § 11-1115, which prohibits a commercial driver from negotiating a crossing if there is insufficient clearance under the vehicle. As indicated, the jury found Thompson 80% negligent and BNSF 20% negligent. In its motion for a directed verdict and renewed motion for judgment as a matter of law, BNSF argued that Appellants failed to present sufficient evidence at trial to support the verdict that BNSF contributed 20% of the negligence. BNSF argued that Mr. Whisenhunt, and thus vicariously Thompson, violated § 11-1115; that the violation is negligence per se; and that the negligence per se was the supervening cause of the accident, absolving BNSF from any liability. The district court rejected BNSF's argument, and concluded that the cause of the accident "was a fact-based question for the jury, to be made in accordance with the jury instructions, in . . . light of all the evidence that was admitted" at trial.

"We review the district court's denial of a judgment as a matter of law de novo," *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1503 (10th Cir. 1994), applying the same standard used by the district court, *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1287 (10th Cir. 2006). "Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there

17

is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). We draw all reasonable inferences in favor of the nonmoving party, reversing "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009) (internal quotation marks omitted). But we do not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Id.* (internal quotation marks omitted). In a diversity case like this, "the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question whether JMOL is appropriate." *Id.* (internal quotation marks omitted).

BNSF's argument here is again premised on its belief that Mr. Whisenhunt violated Okla. Stat. tit. 47, § 11-1115, that his violation is negligence per se, and that this negligence per se was a supervening cause absolving BNSF from liability and entitling it to judgment as a matter of law. Section 11-1115 states: "At a railroad-highway grade crossing, a person operating a Class A, B or C commercial motor vehicle shall not negotiate the crossing if there is . . . [i]nsufficient clearance for the undercarriage of the vehicle."

We here assume without deciding that Mr. Whisenhunt violated the statute and that his violation constitutes negligence per se. We do so to focus on the dispositive issue: whether Mr. Whisenhunt's violation of the statute was the supervening—and

18

therefore the proximate—cause of the collision as a matter of law. We hold that it was not.

Even where a driver is negligent per se, a railway is not absolved from liability unless the driver's negligence was the proximate cause of the injuries. *See Garner v. Myers*, 318 P.2d 410, 413 (Okla. 1957). The proximate cause of an injury is usually a question of fact for the jury to determine. *Akin v. Mo. Pac. R.R. Co.*, 977 P.2d 1040, 1054 (Okla. 1998). "It becomes a question of law for the court only when there is no evidence from which a jury could reasonably find a causal nexus between the defendant's alleged negligent act and the injury." *Id.* Whether there is any competent evidence supporting a jury finding of proximate cause is a legal question for the court. *Jackson v. Jones*, 907 P.2d 1067, 1073 (Okla. 1995).

The proximate cause of an injury is the "cause which sets in motion the chain of circumstances leading to the injury. This causal connection may be broken by the occurrence of . . . a supervening cause." *Akin*, 977 P.2d at 1054. An individual's negligence breaks the chain of causation and becomes the supervening cause only if "his actions were *the* proximate cause" of the injury, as opposed to merely *a* proximate cause of the injury. *Hamilton v. Allen*, 852 P.2d 697, 700 (Okla. 1993) (emphasis added).

"A supervening cause is a new, independent and efficient cause of the injury which was neither anticipated nor reasonably foreseeable." *Akin*, 977 P.2d at 1054–55. A supervening cause usually has "(1) independence from the original negligent act, (2) adequacy of itself to bring about the complained-injury[,] and (3) reasonable

19

unforseeability." *Jackson*, 907 P.2d at 1073. An intervening event's foreseeability is generally a question of fact. *Id.* If under the circumstances the intervening event "might be reasonably expected to occur, the final element is not met and the causal chain will remain unbroken." *Id.*

Here, there was sufficient evidence presented at trial from which a reasonable jury could find it was foreseeable under the circumstances that Mr. Whisenhunt's tractor-trailer would become stuck on the tracks. Appellants submitted evidence that the tractor-trailer had normal clearance and that the trailer's landing gear was fully retracted and unmodified. There was also evidence that the crossing had a humped profile due to its unusually steep approaches, and that the north rail improperly protruded above the crossing's timber planks. Importantly, there was evidence that the tractor-trailer would have cleared the crossing if the north rail was not protruding. And there was evidence that other trucks had gotten hung up at the crossing. Based on the evidence submitted and the jury instructions given at trial, the jury could reasonably conclude that Thompson's negligence per se was not *the* proximate and therefore supervening cause of the accident. *See Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1287 (10th Cir. 2000) (stating that a jury is presumed to follow a court's instructions).

To be sure, § 11-1115 forbids a commercial driver from traversing a crossing if he has insufficient clearance underneath his rig. And "the operator of [a] train can assume the [driver] will obey the law." *Hamilton*, 852 P.2d at 700. But as discussed, the jury could reasonably conclude that Mr. Whisenhunt's actions were merely *a*

20

proximate cause—not *the* proximate cause—of the accident: sufficient evidence was presented at trial to support the jury's finding that Mr. Whisenhunt's negligence combined with BNSF's negligence to cause the collision. And "when a cause . . . combines with another act to produce injury, . . . each negligent actor may be held accountable." *Jackson*, 907 P.2d at 1073 (footnotes omitted). That is the situation here.

In further support of its position, BNSF relies on the Oklahoma Supreme Court's decision in *Akin* and the Oklahoma Court of Appeals' decision in *Short v. Union Pacific Railroad Co.*, 315 P.3d 400 (Okla. Civ. App. 2013). Both cases are distinguishable.

In *Akin* and *Short*, plaintiffs complained that the railroads negligently caused their injuries by failing to provide additional warnings at the crossings. *See Akin*, 977 P.2d at 1042, 1054–56 (alleging the accident was caused by the absence of an automatic gate at the crossing even though the driver traversed the crossing in the presence of flashing warning lights); *Short*, 315 P.3d at 402, 406 (claiming the collision was caused by the railroad's failure to place automatic gates or lights at the crossing even though the driver negotiated the crossing in the presence of reflective crossbucks). Each court concluded that even if the railroad negligently failed to provide additional warnings, the supervening cause of the accident was the driver's independent, negligent, and unforeseeable act in traversing the crossing in the presence of other visible warnings of an oncoming train. *See Akin*, 977 P.2d at 1055–56 (holding that even if the railroad negligently failed to erect an automatic gate at

21

the crossing, the driver's negligence per se in "fail[ing] to stop at the crossing in the presence of discernible warnings was the supervening, and therefore, proximate cause of his death"); *Short*, 315 P.3d at 406 (holding that the accident was caused by the driver's negligence per se where he traversed the crossing in the presence of reflective crossbucks and where he "had an unobstructed view of the imminently approaching train"); *see also Jackson*, 907 P.2d at 1073 (stating that a supervening cause is independent from the original negligent act and is adequate in itself to bring about the injury).

Here, however, it was reasonably foreseeable under the circumstances that Mr. Whisenhunt would attempt unsuccessfully to navigate the crossing. Evidence was presented at trial that he would have safely traversed the crossing if the approaches were not so steep and if the north rail was not protruding above the planks. Put another way, there is evidence that if BNSF was not negligent in its construction or maintenance of the crossing, Mr. Whisenhunt would not have become stuck on the crossing and there would not have been a collision. This is sufficient to support a finding that both Mr. Whisenhunt's and BNSF's negligence contributed to the collision.

Even if Mr. Whisenhunt violated § 11-1115, and his violation is negligence per se, that violation was not *the* proximate and supervening cause of the accident as a matter of law. As a result, BNSF is not absolved from all liability. In view of the reasonable inferences that can be drawn from the evidence, the district court correctly ruled that causation was a fact question for the jury. Accordingly, we affirm the

22

district court's denial of BNSF's renewed motion for judgment as a matter of law.

## C. *Motions to Seal*

Finally, Appellants and BNSF each move to file certain appendices and exhibits under seal. The Clerk of Court provisionally granted both motions, subject to the panel's plenary consideration.

The public has "a common-law right of access to judicial records, but this right is not absolute." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (internal quotation marks omitted). "[T]he presumption in favor of access to judicial records may be overcome where countervailing interests heavily outweigh the public interests in access." *Id.* (internal quotation marks omitted). "The burden is on the party seeking to restrict access to show some significant interest that outweighs the presumption." *Id.* (internal quotation marks omitted).

Appellants move to file under seal Volume VIII of their Appendix. Volume VIII contains pleading exhibits, trial exhibits, and business records BNSF produced during discovery pursuant to the district court's protective order. Appellants' sole reason for filing their motion to seal these records on appeal is to comply with the district court's protective order. They otherwise admit they are unaware of any substantial interest that justifies sealing this material.

Appellants have failed to meet their burden to overcome the presumption in favor of public disclosure. For one, we are "not bound by the district court's decision to seal certain documents below." *Id.* And more importantly, BNSF does not object to unsealing the material. Appellants' motion is denied.

23

BNSF also filed an unopposed motion to seal Exhibits 5 and 6 of its Supplemental Appendix. The exhibits are videos from BNSF's train taken during the collision with Mr. Whisenhunt's rig. BNSF states it does not publicly disseminate such videos because they could attract attention on social media, inspiring members of the public to engage in activities designed to cause other train accidents.

We agree that such behavior could be dangerous to the public and BNSF employees. And because our disposition in this case does not require us to review the videos, the public interest in accessing them is negligible. *See Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (unpublished) (holding that the public's interest in accessing judicial records was outweighed where the sealed documents were not "necessary to determine the litigants' substantive legal rights" (internal quotation marks omitted)). Consequently, we grant BNSF's motion to seal Exhibits 5 and 6.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's denial of BNSF's renewed motion for judgment as a matter of law. But we REVERSE the district court's ruling concerning the extent of BNSF's duty to construct and maintain the crossing, and its related jury instructions and evidentiary rulings. We remand to the district court for a new trial.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

24

*BNSF Railway Company v. C.A.T. Construction, Inc.*, No. 15-6230, Bacharach, J., concurring in the majority's order and judgment.

I join the majority's thorough, well-reasoned order and judgment. As the majority explains, Okla. Stat. tit. 66, § 128 imposes a duty on a railway company to maintain the roadway within the railway company's right-of-way. Here BNSF's right-of-way included the sloped portion of the roadway that allegedly contributed to the accident; thus, BNSF had a duty to maintain that portion of the roadway.

BNSF argues that by enacting Okla. Stat. tit. 69, § 601(A), the Oklahoma legislature abrogated the duty created by § 128. The majority rejects BNSF's argument based on an Oklahoma canon of statutory construction. I agree with the majority's reasoning. But in rejecting BSNF's argument, I would also rely on a second canon: A statute is repealed by implication only if the legislature clearly intends to repeal or supersede the statute. That intent was far from clear when the Oklahoma legislature adopted Okla. Stat. tit. 69, § 601(A).

This section states that county commissioner boards in the various counties "shall have exclusive jurisdiction over the designation, construction and maintenance and repair of all of the county highways and bridges therein." Okla. Stat. tit. 69, § 601(A). The question is whether this statute abrogated a railway company's duty under § 128 to maintain the part of the roadway lying within the railway company's right-of-way. In

my view, § 128 and § 601 can reasonably be read as consistent with one another.

Section 601(A) states that county commissioner boards have "jurisdiction" over roads. Okla. Stat. tit. 69, § 601(A). The term "jurisdiction" might refer simply to the boards' authority to decide whether someone can or must make changes affecting a roadway. *See Markillie v. Bd. of Cty. Rd. Comm'rs*, 532 N.W.2d 878, 881-82 (Mich. Ct. App. 1995) (interpreting "jurisdiction" over a highway to mean "control" with authority to construct, maintain, and repair the highway); Bryan A. Garner, *Garner's Dictionary of Legal Usage* 693 (3d ed. 2011) ("*Jurisdiction* suggests both the legal power and the legal authority to determine, command, rule, or govern to a specified, limited extent . . . ."); I *Bouvier Law Dictionary* 1449 (Stephen Michael Sheppard ed. 2012) (defining "jurisdiction" as the power to legislate, regulate, or assert authority).

This understanding of the term "jurisdiction" is implicit in two publications by the U.S. Department of Transportation that address jurisdiction over railway crossings. First, the *Traffic Control Devices Handbook* frames "jurisdiction" over railway crossings as the authority to decide whether to (1) approve improvements for railway crossings, (2) open new railway crossings, or (3) close existing railway crossings:

> Jurisdiction over railroad-highway grade crossings resides almost exclusively in the States. . . . [S]everal agencies, both

> public and private can be involved when improvements are considered at a railroad highway grade crossing. . . .

> When a new railroad-highway grade crossing is contemplated or when an existing grade crossing is proposed for closing, these agencies should be involved as early as possible in the planning and decisionmaking process.

U.S. Dep't of Transp., Fed. Highway Admin., *Traffic Control Devices Handbook* 8-7 to 8-8 (1983). Second, the *Manual on Uniform Traffic Control Devices* uses the term "jurisdiction" to mean the ability to regulate a railway crossing: "The highway agency or authority with jurisdiction and the regulatory agency with statutory authority, if applicable, jointly determine the need and selection of devices at a grade crossing." U.S. Dep't of Transp., *Manual on Uniform Traffic Control Devices* 747 (2009). "Jurisdiction" as used in § 601(A) could bear a similar meaning, referring to the boards' authority to approve or disapprove proposed changes to railway crossings.

If this is the meaning of the statutory term "jurisdiction," § 128 would not conflict with § 601(A); rather, each statute would address a separate issue. Section 128 would establish a railway company's duties to (1) propose changes necessary to maintain the safety of a right-of-way and (2) implement the changes that are approved. By contrast, § 601(A) would empower the boards to approve or disapprove proposed changes. Because § 601(A) can reasonably be read in this manner, the Oklahoma legislature

3

did not clearly intend to abrogate the duty created by § 128. Consequently, this Oklahoma canon would lead us to conclude that the duty under § 128 remains intact.

* * *

Like the majority, I believe that § 601(A) did not abrogate BNSF's duty to maintain the roadway within BNSF's right-of-way. As the majority explains, this conclusion is supported by the canon providing that a more specific statute takes precedence over a more general statute.

This conclusion is also supported by a second canon: A statute is repealed by implication only if the legislature clearly intends to repeal or supersede the statute. This canon applies because it is not clear whether the Oklahoma legislature intended for § 601(A) to abrogate the duty created by § 128.

Based on both canons of construction, § 128 remained intact after the adoption of § 601(A). Under § 128, BNSF bore a duty to maintain the sloped portion of the roadway that allegedly contributed to the accident.

4